[Civ. No. 4598. Third Appellate District.—September 24, 1932.]

GENE ANTICHI et al., Respondents, v. NEW YORK INDEMNITY COMPANY, Appellant.

[Civ. No. 4599. Third Appellate District.—September 24, 1932.]

W. J. McINTYRE, Respondent, v. NEW YORK INDEMNITY COMPANY, Appellant.

[Civ. No. 4600. Third Appellate District.—September 24, 1932.]

LAURA McINTYRE, Respondent, v. NEW YORK INDEMNITY COMPANY, Appellant.

Hadsell, Sweet & Ingalls for Appellant.

Charles W. Haswell, F. F. Marshall and W. U. Goodman for Respondents.

JAMISON, J., *pro tem.*—These cases were consolidated for trial and have been consolidated for hearing on appeal.

All three of the suits were upon a policy of insurance issued to Gene Antichi and A. E. Mallett, partners doing business under the name of Sacramento-Corning Freight Line and against the New York Indemnity Company.

One suit was brought by the said Antichi and Mallett for $1,000 attorney fees expended in defending actions brought by W. J. McIntyre and Laura McIntyre against them. The suit of Laura McIntyre is to recover the sum of $7,733.30 and $29.50 costs based upon a judgment in her favor in an action for damages for personal injuries against said Antichi and Mallett. The suit of W. J. McIntyre is for consequential damages resulting from the injuries to his wife Laura McIntyre based upon a judgment for $2,500 against the said Antichi and Mallett. Plaintiffs had judgments in all of these cases and from these judgments defendant appeals.

The policy of insurance upon which the actions are founded was issued on June 20, 1928. The accident which gave rise to these actions occurred on February 13, 1929. The said policy contained the following provision:

''In consideration of the reduced premium rates at which this policy is written and of the statement made by the assured that he does not own more automobiles than those described in the policy and that there will not be a greater number of persons who operate such automobiles than those named in the endorsement without previous notice to the Company and payment of proper additional premium therefor, it is agreed that without previous notice to the company and payment of additional premium this policy covers the operation of the automobiles described only while such automobiles are being personally driven by Emmet Harden, Claude Strawn and R. C. McEwen or by any person when accompanied by such named drivers.

''If any of the named drivers is a hired chauffeur it is agreed that the policy is extended to cover while such auto-

mobiles are being driven by anyone employed as his substitute by reason of such chauffeur's illness or leave of absence, and by anyone employed as his successor. Notice of such successor or substitute shall be furnished the company within ten days of employment of such successor or substitute.''

Emmet Harden, using one of the trucks covered by the policy and carrying a load of turkeys consigned to San Francisco, left Corning at 11 o'clock P. M. on the 12th of February, 1929, and arrived at Davis at 8 o'clock A. M. on the morning of February 13, 1929. When he arrived at Davis he telephoned Mallett that on the trip from Corning he had blown out a gasket and asked that a driver be sent to Davis. Thereupon both Mallett and Antichi went to Davis and after the truck was repaired, Harden, complaining of not feeling well, and not feeling able to drive the truck to San Francisco, Antichi took charge of the truck and drove it, and on his way to San Francisco the accident happened which caused these suits.

Appellant contends that this accident was not covered by the terms of the policy; that the words, under the heading of More Automobiles and Drivers, ''if any of the named drivers is a hired chauffeur, it is agreed that the policy is extended to cover while such automobiles are being driven by anyone employed as a substitute,'' mean a hired substitute, or someone other than the named assured.

The case of *McCluskey* v. *Cromwell*, 11 N. Y. 593, relied on by appellant to sustain his contention is not in point. In that case the general contractor gave a bond conditioned that he would pay every laborer employed by him. The plaintiff's workers were employed by an independent contractor and the court very properly held the general contractor was not liable.

The dissenting opinion of Judge Ruggles in that case very clearly defines the word ''employed'' wherein he said: ''A man hired to labor is employed, but a man may be employed in a work who is not hired. Materials are employed for building locks, but are not hired. A man who does his own work, or the work of another is employed in it, although he receives no wages.''

Nor is the case of *Cooper* v. *Industrial Acc. Com.*, 177 Cal. 685 [171 Pac. 684], cited by appellant in point here.

In that case the widow claimed damages for the death of her husband, who was a member of a partnership engaged in mining. The accident occurred while he was engaged in business for the partnership, and it was held that the husband was not an employee of the partnership within the meaning of the Workmen's Compensation, Insurance and Safety Act, although there was evidence that he had been employed by the partnership at a fixed wage.

In the instant case Antichi was not employed by the partnership of which he was a member to drive the said truck, but merely took over its operation owing to the illness of Harden.

■ The word "employ" is used in divers significations. Although it usually imports the relation of master and servant, or of employer and employee, this is not the universal rule, and the idea of compensation is not necessarily involved in the term. In the present tense it is applied to persons engaged in doing something. In the past tense it is applied to persons engaged in the performance of work or duties, either busy or occupied at work. (20 Cor. Jur. 1228, 1229.) To engage is one of the meanings of employ. (Black's Law Dictionary, 430.)

The word "employed" may mean either busy or occupied at work or may mean entrusted with the management of affairs. (2 Words & Phrases, 2877.) ■ The rule is well settled that where there is an ambiguity in the policy caused by the insurer, the policy will be given an interpretation most favorable to the insured. (*Swift* v. *Zurich Gen. Acc. & L. Ins. Co.*, 112 Cal. App. 709 [297 Pac. 578]; *Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50 [276 Pac. 1004]. See, also, *Goorberg* v. *Western Assur. Co.*, 150 Cal. 510 [119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L. R. A. (N. S.) 876, 89 Pac. 130].)

■ This policy was drawn by the insurer. It caused the uncertainty or ambiguity to exist, and it is not urged that any additional hazard was incurred by the substitution of Antichi for Harden.

We are of the opinion that the policy covered such substitution.

■ Appellant next contends that the judgment in favor of respondent W. J. McIntyre should be reversed. This contention is founded upon the claim that damages suffered

by the husband for injuries to his wife, that is to say, consequential damages, are not covered by the policy. The policy contains the following provision: "Indemnity provided by this policy applies only to the item below for which a premium charge is made. Legal liability for bodily injuries or death, one person $10,000.00. One accident $10,000.00."

In compliance with the act of the legislature approved May 22, 1919 (Stats. 1919, p. 776), the following provision is also contained in said policy: "Bankruptcy or insolvency of the assured shall not relieve the company of any legal obligation hereunder. If any person or his legal representatives shall obtain final judgment against the assured because of such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within thirty days after it is rendered, then such person or his legal representatives may proceed against the company to recover the amount of such judgment, either at law or equity, but not exceeding the limit of this policy applicable thereto."

Appellant cites the case of *New Amsterdam Casualty Co.* v. *Nadler et al.*, 115 Ohio St. 472 [154 N. E. 736], decided by the Supreme Court of Ohio in support of this contention. In that case the court held that the husband could not recover consequential damages for an injury to his wife, under a policy which covered bodily injuries to a person; that it could not reasonably be held to include the kind of loss suffered by the husband. And in the case of *Price* v. *National Surety Co.*, 221 App. Div. 56 [222 N. Y. Supp. 437], also cited by appellant, the court held that the term "injury to person" or "injury to persons" refers to direct bodily damage to the person upon whom the injury was inflicted and did not include injury to another in loss as a consequence of such bodily injury. Appellant also cites cases from other states holding substantially the same doctrine.

But in none of the cases were the terms fixing the liability of the indemnity company similar to those contained in the policy in the instant case.

This policy provides indemnity to the assured to the extent of $10,000 against legal liability for bodily injuries. This judgment of W. J. McIntyre was for hospital bills,

medical attention and loss of services incurred by him by reason of the bodily injuries sustained by his wife in the said accident. Had the policy provided only for damages arising from bodily injuries, the authorities cited by appellant would be controlling, but it goes much further than that and indemnifies the assured against all legal liability arising from bodily injuries. There can be no question but that the judgment of W. J. McIntyre was a legal liability against the assured growing out of the bodily injury suffered by the wife. Such being the case, the said judgment for consequential damages was covered by the policy.

The final contention of appellant is that the decision of the trial court is in contravention of the Constitution of the United States and of this state, in that appellant did not have its day in court in defending against the said action brought by the McIntyres against Antichi and Mallett. Inasmuch as it admitted that appellant refused to defend the said cases after being called upon so to do, we see no merit in this contention.

Nor is there any merit in the claim that by an act of the legislature material or any alterations were made in the policy. If appellant refers to the act of 1919, it is sufficient to say that this act was in force a number of years before this policy was issued.

The judgments are affirmed.

Plummer, Acting P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 24, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.