371 A.2d 193

**Allan E. BRAKEMAN, Appellee,**

v.

**The POTOMAC INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1976.

Decided March 16, 1977.

68

———◆———

Roger H. Taft, John M. Wolford, MacDonald, Illig, Jones & Britton, Erie, for appellant.

Paul D. Shafer, Jr., Thomas, Shafer, Walker, Dornhaffer & Swick, Meadville, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On March 3, 1970, the appellee, Allan E. Brakeman, was involved in an accident when his motorcycle collided with an automobile operated by David Baker in Meadville Pennsylvania. The Baker automobile was owned by Edwin Baker, David's father. David, a seventeen-year-old licensed operator, was insured under an automobile liability insurance policy maintained by the elder Baker with the appellant, The Potomac Insurance Company [hereinafter Potomac]. As a result of the accident, Brakeman allegedly suffered permanent disability and loss of income. Potomac did not receive written notice of the accident until October 6, 1970, after the Bakers had received a letter from Brakeman's attorney stating that suit against David Baker was being instituted. Potomac refused to defend against Brakeman's suit or accept any liability flowing from the accident, stating that Baker breached the insurance contract by failing to provide Potomac with timely notice of the accident. Brakeman filed suit against Baker on February 24, 1971, in the Court of Common Pleas of Crawford County. Baker retained his own counsel and on January 10, 1972, a ver-

dict in the sum of ten thousand dollars ($10,000.00), the exact amount of Baker's insurance coverage, was directed by the Court in favor of Brakeman and against Baker by agreement of the parties and without actual trial.

Brakeman then brought the instant action against Potomac in the Court of Common Pleas of Crawford County to recover the amount of the consent judgment. A jury returned a general verdict in favor of Brakeman for ten thousand dollars ($10,000.00). The court, however, subsequently granted Potomac's motion for judgment *non obstante veredicto* on the ground that Baker's written notice to Potomac, some seven months after the accident, was unreasonable and in violation of the clause in the insurance policy requiring notice of the accident "as soon as practicable."

Brakeman appealed to the Superior Court of Pennsylvania which reversed the judgment entered in the trial court in favor of Potomac and remanded the record with directions to proceed with a new trial. The Superior Court ruled that a delayed notice of an accident will not release the insurer from liability under the policy, even in the absence of extenuating circumstances, if the claimant can show that the insurer was not in fact prejudiced thereby. *Brakeman v. Potomac Insurance Co.,* 236 Pa. Super. 320, 344 A.2d 555 (1975).[1] We granted allocatur.

The insurance policy in the instant case contained the following provisions:

> *In the event of an accident, occurrence or loss, written notice* containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, *shall be given by or for the*

1. The ruling of the Superior Court was not in keeping with prior decisions of this Court.

*insured to the company or any of its authorized agents as soon as practicable.*

\* \* \* \* \* \* \* \*

"No action shall lie against the company unless, *as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy,* nor until the amount of the insured's obligation to pay shall have been finally determined either *by judgment against the insured after actual trial* or by written agreement of the insured, the claimant and the company." [Emphasis added.]

Our past decisions clearly establish the validity of a provision in an insurance policy requiring written notice of accident to be given "as soon as practicable" and where an insurance policy has contained such a clause, we have said that the duty to give the notice as stipulated is a condition precedent, and its breach releases the insurance company from the obligations imposed by the policy, regardless of whether the company suffered prejudice thereby. *Meierdierck v. Miller*, 394 Pa. 484, 147 A.2d 406 (1959); Jeannette Glass Co. v. Indemnity Insurance Co. of North America, 370 Pa. 409, 88 A.2d 407 (1952); *Unverzagt v. Prestera*, 339 Pa. 141, 13 A.2d 46 (1940); *Ross v. Mayflower Drug Stores, Inc.*, 338 Pa. 211, 12 A.2d 569 (1940). We have interpreted "as soon as practicable" to mean within a reasonable time depending on the facts and circumstances of each case, *Farmers National Bank v. Employers Liability Assurance Corp.*, 414 Pa. 91, 199 A.2d 272 (1964); *Jeannette Glass Co. v. Indemnity Insurance Co. of North America*, supra; *Unverzagt v. Prestera*, supra, and the cases indicate that extenuating circumstances may excuse a delay in notification provided there has not been a lack of due diligence.[2]

2. Ordinarily however, in the absence of extenuating circumstances, the question, whether notice was reasonable and therefore timely, has been one for the court. *Meierdierck v. Miller*, supra; *Jeannette Glass Co. v. Indemnity Insurance Co. of North America*, supra; *Unverzagt v. Prestera*, supra; *Ross v. Mayflower*

*Wardle v. Miller*, 375 Pa. 565, 101 A.2d 720 (1954); *Hughes v. Central Accident Insurance Co.*, 222 Pa. 462, 71 A. 923 (1909).

■ Thus, under our prior decisions, a party claiming rights under a liability insurance policy has had the burden of proving compliance with the terms and conditions of that policy and the determination whether to relieve the insurer of its obligations under the policy on the ground of late notice has depended only on the length of delay in giving the notice and the reasons offered to excuse the delay. As such, our prior decisions are in line with the rule applied in a majority of jurisdictions. See Annot. 18 A.L.R.2d 443 (1951); 8 J. Appleman, *Insurance Law and Practice* § 4732 (1962), and cases cited therein. Our research indicates, however, a trend of late in several jurisdictions away from the classic contractual approach towards a view that considers prejudice to the insurance company as a material factor in determining whether to relieve the insurance company of its coverage obligations by virtue of late notification. Even in these last mentioned jurisdictions, however, there is no agreement as to whether the insurer has the initial burden of

*Drug Stores, Inc.*, supra. Notwithstanding a specific jury response to a special interrogatory that sufficient extenuating circumstances existed to excuse the seven-month delay in the instant case, the trial court ruled to the contrary in granting Potomac's motion for judgment n. o. v. Brakeman contended that there were two extenuating circumstances to excuse the seven-month delay. He argued 1) that Edwin Baker gave oral notice of the accident to Potomac's agent, Gelvin, Jackson & Starr, within a few days after the accident and 2) that David Baker was a minor at the time of the accident. The Court rejected the first contention on the ground that the jury specifically determined in response to special interrogatories that the first written notice to Potomac was given on October 6, 1970, and that no oral notice had been given prior to that time. The court also rejected the second contention on the ground that "if the operator is old enough to be licensed to drive a motor vehicle he is old enough to be held to comply with the requirements of the policy protecting him." In support of that conclusion, the court pointed out that David Baker was in fact only five months short of majority age at the time of the accident.

demonstrating prejudice. Some courts place the burden on the claimant to establish an absence of prejudice to the insurer in order to recover on the policy despite late notice,[3] while others require the insurance company to show that it was prejudiced by the tardiness of the notice in order to escape liability.[4] We think the preferable rule is that which requires the insurance company to prove not only that the notice provision was breached, but also that it suffered prejudice as a consequence.

The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can "bargain" is the monetary amount of coverage. And, as we have recognized, notice of accident provisions, such as that with which we are concerned instant-

---

3. *Dairyland Insurance Co. v. Cunningham,* 360 F.Supp. 139 (D. Colo. 1973); *Tiedtke v. Fidelity & Casualty Co.,* 222 So.2d 206 (Fla. 1969); *Henderson v. Hawkeye-Security Insurance Co.,* 252 Iowa 97, 106 N.W.2d 86 (1960); *Calhoun v. Western Casualty & Surety Co.,* 260 Wis. 34, 49 N.W.2d 911 (1951).

4. *Lindus v. Northern Insurance Co.,* 103 Ariz. 160, 438 P.2d 311 (1968); *State Farm Mutual Automobile Insurance Co. v. Johnson,* Del.Supr., 320 A.2d 345 (1974); *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 237 A.2d 870 (1968); *Lusch v. Aetna Casualty & Surety Co.,* 272 Or. 593, 538 P.2d 902 (1975); *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 282 A.2d 584 (1971); *Factory Mutual Liability Insurance Co. v. Kennedy,* 256 S.C. 376, 182 S.E.2d 727 (1971); *Oregon Automobile Insurance Co. v. Salzberg,* 85 Wash.2d 372, 535 P.2d 816 (1975); *LaPlace v. Sun Insurance Office, Ltd.,* 298 F.Supp. 764 (D.V.I. 1969).

ly, are uniformly found in liability insurance policies. *Meierdierck v. Miller*, supra, 394 Pa. at 486, 147 A.2d at 408. Indeed, a review of the cases indicates that often the policies express the condition in identical language. In *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968), the Supreme Court of New Jersey stated:

> ". . . [W]e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectation of the purchaser so far as its language will permit."

51 N.J. at 93, 237 A.2d at 873.[5] Thus, an insured is not able to choose among a variety of insurance policies materially different with respect to notice requirements, and a proper analysis requires this reality be taken into account.[6]

A strict contractual approach is also inappropriate here because what we are concerned with is a forfeiture. The insurance company in the instant case accepted the premiums paid by the insured for insurance coverage and now seeks to deny that coverage on the ground of

---

5. See also *State Farm Mutual Automobile Insurance Co. v. Johnson*, Del.Supr., 320 A.2d 345 (1974); *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971); *LaPlace v. Sun Insurance Office, Ltd.*, 298 F.Supp. 764 (D.V.I. 1969); Note, "The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice," 74 Dick.L.Rev. 260 (1970).

6. This lack of choice is underscored when one considers that the automobile has become very nearly a practical necessity in the last quarter century and that it is a misdemeanor to operate a passenger vehicle without the insurance coverage required by the Pennsylvania No-Fault Motor Vehicle Insurance Act. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 601, 40 P.S. § 1009.601 (Supp. 1976).

late notice. As was said in *Cooper v. Government Employees Insurance Co.,* supra:

> "[A]lthough the policy may speak of the notice provision in terms of 'condition precedent,' . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds."

51 N.J. at 93–94, 237 A.2d at 873–874.[7]

We are reluctant, therefore, to allow an insurance company to refuse to provide that which it was paid for unless a sound reason exists for doing so.

The purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition, either through settlement or defense of the claim. *Farmers National Bank v. Employers Liability Assurance Corp.,* supra; *Hachmeister, Inc. v. Employers Mutual Liability Insurance Co.,* 403 Pa. 430, 169 A.2d 769 (1961); *Jeannette Glass Co. v. Indemnity Insurance Co. of North America,* supra; *Bartels Brewing Co. v. Employers' Indemnity Co.,* 251 Pa. 63, 95 A. 919 (1915); 8 J. Appleman, *Insurance Law and Practice* § 4732 (1962). Such a requirement protects the insurance company from fraudulent claims, as well as invalid claims made in good faith, by allowing the insurance company to gain early control of the proceedings. Since the insurance company has the advantage of a trained le-

7. Note 5, supra.

gal and investigatory staff, which is unavailable to the average insured, the notice requirement normally operates to benefit the insured as well as the insurance company.

Thus, a reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e. g., being forced to pay a claim against which it has not had an opportunity to defend effectively. In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation. As was succinctly stated by Judge (now Justice) Tate in *Miller v. Marcantel*, 221 So.2d 557 (La.App. 1969):

> "The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected. Therefore, unless the insurer is actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision."

221 So.2d at 559. We have in the past excused a condition of forfeiture where to give it effect would have been purely arbitrary and without reason, and we are of the opinion that, in the absence of prejudice to the insurance

company, such a situation exists in the context of a late notice of accident. Cf. *Burne v. Franklin Life Insurance Co.*, 451 Pa. 218, 301 A.2d 799 (1973); *Grandin v. Rochester German Insurance Co.*, 107 Pa. 26 (1884). Allowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable. Moreover, we do not think such a result comports with the reasonable expectations of those who purchase insurance policies.[8]

For the foregoing reasons, we are of the opinion that the law established by our prior decisions relative to the effect of a clause in a liability insurance policy requiring the giving of notice of accident to the insurance company "as soon as practicable" has been too restrictive and should be changed. We therefore hold that where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove

8. Also, an analysis that does not consider whether the insurance company has suffered prejudice from an untimely notice too lightly disregards significant public policy considerations. Insurance contracts are not purely private matters between insurance companies and their insureds; rather there is a public interest in automobile liability insurance contracts and that is the protection of innocent victims of automobile accidents. See *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968); *Nationwide Mutual Insurance Co. v. Ealy*, 221 Pa.Super. 138, 289 A.2d 113 (1972); Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101 et seq., 40 P.S. § 1009.101 et seq. (Supp.1976). This public interest would be disserved by a rule that denied an accident victim recovery against the insurance company because it received late notice of the accident, even though it suffered no prejudice as a consequence thereof. *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968); *Factory Mutual Liability Insurance Co.*, 256 S.C. 376, 182 S.E.2d 727 (1971); *Oregon Automobile Insurance Co.*, 85 Wash.2d 372, 535 P.2d 816 (1975); Note, "The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice," 74 *Dick.L.Rev.* 260 (1970).

that the notice provision was in fact breached and that the breach resulted in prejudice to its position.

We recognize that prejudice is a difficult matter to prove affirmatively,[9] but although it may be difficult for the insurance company to prove it suffered prejudice as a consequence of an untimely notice, it appears to us that it would be at least as difficult for the claimant to prove a lack of prejudice. In view of the facts that an insurance contract is not a truly consensual agreement, that what is involved is a forfeiture and it is the insurance company who chooses to disclaim its obligations under the policy, it is more equitable to place the burden of showing prejudice on the insurance company.[10]

Finally, since this opinion announces a new rule and since Potomac had no prior notice that it would be required to show it suffered prejudice as a result of the late notice in the instant case, in the interest of fairness Potomac must be given the opportunity in a new trial to meet the standard herein announced. In addition to the issue of prejudice, Potomac should be allowed to litigate the basic questions of Baker's liability and Brakeman's damages.[11] Potomac's initial denial of liability and re-

9. 8 J. Appleman, *Insurance Law and Practice* § 4732 (1962); See also Note, "Liability Insurance Policy Defenses and the Duty to Defend," 68 *Harv.L.Rev.* 1436 (1955).

10. Note 4, supra; Note, "The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice," 74 Dick.L.Rev. 260 (1970). Cf. *Campbell v. Allstate Insurance Co.,* 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); *Conroy v. Commercial Casualty Insurance Co.,* 292 Pa. 219, 140 A. 905 (1928); *Young v. American Bonding Co.,* 228 Pa. 373, 77 A. 623 (1910); *Hargrove v. CNA Insurance Group,* 228 Pa.Super. 336, 323 A.2d 785 (1974); *Flagg v. Puleio,* 189 Pa.Super. 329, 150 A.2d 400 (1959); *Frank v. Nash,* 166 Pa.Super. 476, 71 A.2d 835 (1950).

11. We need not and do not decide whether Potomac would have been otherwise estopped to contest the basic questions of Baker's liability and Brakeman's damages and bound by the consent verdict because of its initial refusal to defend Baker. Potomac argues that Brakeman cannot recover on the consent judgment because of the "actual trial" provision in the insurance policy. Brakeman, on the other hand, contends that Potomac's initial re-

fusal to defend Baker against Brakeman's claim may very well have been based on a reliance upon our past decisions. We cannot say that such reliance was unjustified; nor can we say that Potomac would not have contested Baker's liability and damages in the tort action, had the new rule been in effect.

Accordingly, the order of the Superior Court is affirmed with directions that the new trial proceed in accordance with this opinion.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring and dissenting opinion.

POMEROY, J., filed a dissenting opinion.

ROBERTS, Justice, concurring and dissenting.

Appellant, Potomac Insurance Company (Potomac), insured a vehicle owned by Edward J. Baker. Mr. Baker's son, David, was involved in a motor vehicle accident in which appellee, Allan E. Brakeman, was injured. The accident occurred on March 3, 1970, but Potomac did not receive written notice of the accident until October 3, 1970, and refused to defend its insured in the action brought by Brakeman because of late notice of the claim.

fusal to defend Baker repudiated the policy and Potomac should not be allowed the benefit of a policy provision that is predicated on the willingness of the insurance company to defend its insured. See and compare *Wright v. Allstate Insurance Co.*, 285 S. W.2d 376 (Tex.Civ.App.1955); *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 207 Pa.Super. 404, 217 A.2d 781 (1966), with *Murphy & Co. v. Manufacturers' Casualty Co.*, 89 Pa.Super. 281 (1926); *Roberts v. Fireman's Insurance Company*, 376 Pa. 99, 101 A.2d 747 (1954).

Brakeman and the insured reached a settlement after the jury was sworn but before evidence was presented. The court entered a judgment reflecting the settlement of the parties for the face amount of the policy, $10,000. Brakeman then brought this action against Potomac as a third party beneficiary of the policy for the amount of the judgment against the insured. The jury returned a verdict of $10,000 against Potomac but the trial court granted judgment n. o. v. on the ground that late notice by the insured relieved Potomac of any obligation.

I agree with the majority that the insured's failure to comply with the notice provisions of the insurance policy should not, by itself, relieve an insurer of its obligations under a liability insurance policy. An insurance carrier should be required to prove that the failure to comply with the notice provisions of the policy prejudiced its position. Because this Court announces a new rule of decision, I also agree that this case should be remanded to the trial court to afford Potomac an opportunity to establish prejudice. Unlike the majority, however, I am not persuaded that Potomac's alleged reliance on past case law justifies allowing Potomac a second opportunity to litigate its insured's liability or the amount of Brakeman's damages.

Today's decision that insurers must prove prejudice to be relieved of their obligation to defend an insured who fails to give timely notice is consistent with the clear trend of the law.[1] Balancing the equities between the insurance carrier which refused to defend its insured, al-

1. E. g., *State Farm Mutual Ins. Co. v. Murnion*, 439 F.2d 945 (9th Cir. 1971); *Lindus v. Northern Ins. Co.*, 103 Ariz. 160, 438 P.2d 311 (1968); *State Farm Mutual Automobile Ins. Co. v. Johnson*, 320 A.2d 345 (Del.Super.Ct.1974); *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870 (1968); *Keith v. Lutzweit*, 106 Ohio App. 123, 153 N.E.2d 695 (1957); *Factory Mutual Liability Ins. Co. v. Kennedy*, 256 S.C. 376, 182 S.E.2d 727 (1971); *Oregon Automobile Insurance Co. v. Salzberg*, 85 Wash.2d 372, 535 P.2d 816 (1975); Note, The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice, 74 Dick.L.Rev. 260 (1970).

80

beit in reliance on prior law, and the injured party, who settled with the insured and was successful in persuading this Court to adopt a new rule, the injured party should be given the benefit of our decision.[2] To permit Potomac to litigate the issues of its insured's liability and Brakeman's damages is unfair to both the insured and Brakeman. After Potomac refused to defend against Brakeman's claim, the insured was entitled to settle; by breaching its promise to defend, Potomac lost its right to control the suit. The purpose of an insurance policy is to ensure that if claims are brought against the insured, the insurer will defend and pay the amount of a settlement or judgment. If the insured's late notice did not relieve Potomac of its obligations under the insurance policy, it is unfair to give Potomac a second opportunity to absolve itself of liability. Allowing Potomac to litigate liability and damages is also unfair to Brakeman. By settling with the insured, Brakeman chose the certainty of settling for the amount of the policy and sacrificed the possibility of a higher verdict against the insured. Moreover, to penalize both the insured and the injured party for a good faith settlement because the insurance company relied on prior cases is contrary to public policy which favors good faith settlements of claims.[3]

**2.** As Judge Cercone of the Pennsylvania Superior Court noted in his concurring opinion in this case:

"The result also comports with the everstrengthening public policy that innocent victims of automobile accidents should not go uncompensated unless strong countervailing reasons exist therefor."

*Brakeman v. Potomac Insurance Company,* 236 Pa.Super. 320, 329, 333, 344 A.2d 555, 559, 561 (1975) (concurring opinion of Cercone, J., joined by Hoffman and Spaeth, JJ.).

**3.** The law has long favored and encouraged settlements by parties. Our overburdened judicial system could hardly function without the settlement of disputes without trials. Efforts or practices which discourage good faith settlements are contrary to public policy. It is unsound to penalize the insured and the injured party for settling in good faith after the insurer has refused to defend.

However, Potomac should not be bound by the settlement between the insured and Brakeman unless it was made in good faith. E. g. *Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621 (10th Cir. 1942). Thus, I would remand to determine (1) whether Potomac suffered prejudice because of the late notice of Brakeman's claim, and (2) whether the settlement was made in good faith.

Because I do not believe that a new trial on liability and damages is warranted, I find it necessary to address Potomac's claim that Brakeman cannot recover from Potomac because the insured did not comply with the "actual trial" provision of the insurance policy. The "actual trial" provision provides:

> "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Potomac contends that the insured settled the claim without actual trial or Potomac's consent and therefore Brakeman, as a third party beneficiary to the policy, is precluded from maintaining an action against Potomac. I do not agree.

If on remand, Potomac fails to prove that it was prejudiced by the late notice, Potomac has unjustifiably refused to defend its insured and has thereby breached the insurance contract. See *Springfield v. Indemnity Ins. Co. of N. A.*, 361 Pa. 461, 64 A.2d 761 (1949); *Conroy v. Commercial Cas. Ins. Co.*, 292 Pa. 219, 140 A. 905 (1928); accord, *American Mut. Liability Ins. Co. v. Buckley & Co.*, 117 F.2d 845 (3d Cir. 1941); *Zeitz v. Zurich Gen. Accident and Liability Ins. Co.*, 165 Pa.Super.

295, 67 A.2d 742 (1949); *Conrad v. Duffin,* 158 Pa.Super. 305, 44 A.2d 770 (1945); *Kelly v. Kass,* 154 Pa.Super. 267, 35 A.2d 531 (1944); see generally, 49 A.L.R.2d 694 (1956). Where an insurance carrier breaches its insurance contract by unjustifiably refusing to defend its insured, it cannot assert as a defense to an action by the insured or the injured party that the insured did not comply with the "actual trial" provisions of the insurance contract. *St. Louis Dressed Beef v. Maryland Cas. Co.,* 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1926); *Traders and Gen. Ins. Co. v. Rudco Oil and Gas Co.,* 129 F.2d 621 (10th Cir. 1942); *Hardware Mut. Cas. Co. v. Hilderbrandt,* 119 F.2d 291 (10th Cir. 1941); *Antichi v. New York Indem. Co.,* 126 Cal.App. 284, 14 P.2d 598 (1932); *Roberts v. Fireman's Insurance Co.,* 376 Pa. 99, 101 A.2d 747 (1954); *Murphy and Co. v. Manufacturers' Cas. Co.,* 89 Pa.Super. 281 (1926); *Pioneer Cas. Co. v. Jefferson,* 456 S.W.2d 410 (Tex.Civ.App.1970); *American Fidelity & Cas. Co. v. Williams,* 34 S.W.2d 396 (Tex. Civ.App.1930); 48 A.L.R.2d 1082 (1973).

In the seminal case of *St. Louis Dressed Beef v. Maryland Cas. Co.,* supra, the United States Supreme Court held that an insurance company which unjustifiably refuses to defend its insured cannot rely on an "actual trial" provision in the insurance policy as a defense to a suit by the insured to recover the amount of the settlement between the injured party and the insured. Justice Holmes noted:

> "The . . . [insurer], by its refusal, cut at the very root of the mutual obligation, and put an end to its right to demand further compliance with the supposed term of the contract . . . . The . . . [insurer], by its abdication, put . . . [the insured] in its place, with all its rights."

201 U.S. at 181, 26 S.Ct. at 403.

In *Murphy & Co. v. Manufacturers' Cas. Co.*, 89 Pa.Super. 281 (1926),[4] cited with approval in *Roberts v. Fireman's Ins. Co.*, 376 Pa. 99, 101 A.2d 747 (1954), the insurance company refused to defend its insured and denied liability under the policy. The insured settled with the injured party and brought suit against the insurer. The insurer asserted that its insured could not recover because it had not complied with the "actual trial" provisions of the policy. The court held, however, that this compliance with this provision was predicated upon the insurer's obligation to defend the insured.

"[W]hen the company unequivocally repudiated a liability under the policy, it was in no position to insist that the insured must do nothing until an action was brought against it and then press the case to final judgment, instead of making settlement of the loss advantageous to both insurer and insured. The insurance company's initial repudiation of the contract in denying liability under the policy relieved the insured of strict performance of those provisions intended for the protection of the insurer only if it recognized the

4. Appellants assert that *Murphy* is inapposite because the insurance company did not dispute its insured's liability or the amount of the settlement. There is dictum in *Murphy* to the effect that an insurance company is not absolutely bound by a settlement between its insured and the injured party. 89 Pa.Super. at 285. ("The insurance company was not absolutely bound by the settlement; it could have defended on the ground that [the insured party] had no enforceable claim against [the insured], or that the amount was excessive."). However, this dictum has no effect on the court's holding that an insurance company waives its rights to insist that an insured comply with the "actual trial" provision of the policy after the insurer has unjustifiably refused to defend the insured. As discussed infra, an insurance carrier is not absolutely bound by the settlement between the insured and the injured party. In order to bind the insurer, the settlement must have been made in good faith. E. g. *Butler Bros. v. American Fidelity Co.*, 120 Minn. 157, 139 N.W. 355 (1913). The issues whether the insured was liable and the amount of the damages are relevant to this determination, although these issues are not directly open to litigation in the action by the insured or the injured party against the insurance company.

liability and assumed charge of the matters relating to the claim."

Id. at 286.

Therefore if Potomac breached its contract to its insured, it cannot assert as a defense that its insured did not comply with the "actual trial" provision of the insurance policy.[5]

Moreover, if Potomac breached its insurance contract, it should be obligated to pay the amount of the settlement and should not be allowed a second opportunity to litigate its insured's liability or Brakeman's damages. See *American Mut. Liability Ins. Co. v. Buckley & Co.*, supra; *Noreika v. Pennsylvania Indem. Corp.*, 135 Pa. Super. 474, 5 A.2d 619 (1939); *Murphy & Co. v. Manufacturers' Cas. Co.*, supra; 49 A.L.R.2d 694 (1956). However, Potomac should only be bound by the settlement if it was made in good faith. E. g. *Traders & Gen. Ins. Co. v. Rudco Oil and Gas Co.*, supra; *Hardware Mut. Cas. Co. v. Hilderbrandt*, supra; *Jones v. Southern Surety Co.*, 210 Iowa 61, 230 N.W. 381 (1929); *Butler Bros. v. American Fidelity Co.*, 120 Minn. 157, 139 N.W. 355 (1913); *W. I. Anderson & Co. v. American Mut. Liability Ins. Co.*, 211 N.C. 23, 188 S.E. 642 (1936); *United States Fidelity & Guaranty Co. v. Pressler*, 185 S.W. 326 (Tex.Civ.App.1916); 49 A.L.R.2d 694 (1956); but see *Martinique Shoes, Inc. v. New York Progressive Wood*

5. I see no reason to distinguish between suits by the insured and suits by the injured party. In *Wright v. Allstate Insurance Co.*, 285 S.W.2d 376 (Tex.Civ.App.1955), there is dictum to the effect that waiver of the conditions of the insurance policy after the insurer has breached the insurance contract is "personal to the insured." I do not agree. I see no basis to differentiate between the insured and the injured party where the insurer has breached its duty to defend the insured. In light of the public policy that innocent victims should not go uncompensated without good reason and that good faith settlements should be encouraged, I would permit the injured party to maintain an action against the insurer whenever the insured could maintain such an action. As long as the settlement between the insured and the injured party is entered into in good faith, I would permit the injured party to recover against the insurance carrier.

*Heel Co.*, 207 Pa.Super. 404, 217 A.2d 781 (1966); *Murphy & Co. v. Manufacturers' Cas. Co.*, supra (dictum).

In *Butler Bros. v. American Fidelity Co.*, 120 Minn. 157, 169, 139 N.W. 355, 359–60 (1913), the court held that a settlement between the insured and the injured party was presumptive evidence of the liability of the insured and the amount of damages. The court noted:

"Though there are decisions that seem to support the view that the insured, if he settles the case, takes his chances of being able to prove, in an action to recover of the insurer, that there was a liability imposed by law on the insured, and that the amount paid was not excessive, this view does not appeal to our idea of equity or law. In effect it would preclude the insured from in good faith compromising an action against him when the insurer has refused to settle or defend it, contrary to its agreement. The insured, in order to protect himself, must permit the issue to be tried, and a judgment rendered, or must take his chances of being able to prove, in the action against the insurer, that he was in fact liable in the original action. This would be an ungrateful and often a difficult task. It would mean that the insured must establish his own negligence. Nor does it seem right that a settlement made in good faith by the insured, when the result of the case is in doubt, though it be to the advantage of both the insured and the insurer, should relieve the insurer from liability for its breach of contract, unless the insured proves affirmatively that it was liable in the case settled. If there was bad faith, if the action at the time it is compromised appears clearly to be without merit, so that the payment of any sum is a mere gratuity, we can readily concede that the amount paid cannot be recovered of the insurer. But where the insurer has agreed to settle or defend all claims within the policy . . . and has refused to do either, thus breaching its contract, and compelling the

insured to defend the action, we hold that the insured may in good faith make a settlement of the action, and may recover the amount paid on such settlement of the insurer, unless it is made to appear affirmatively that there could have been no recovery had the action been tried."

In *Traders & Gen. Ins. Co. v. Rudco Oil and Gas Co.*, 129 F.2d 621, 626 (10th Cir. 1942), the United States Court of Appeals for the Tenth Circuit observed:

"If . . . . the insurer denies liability for the asserted claims and refuses to defend in the name of the assured or to acknowledge any duty or obligation arising under the contract of insurance, the assured is released from the covenant against settlement or interference and may assume control of the litigation, defend in his own name, or effect a reasonable and prudent settlement of the claims or suits, and thereafter assert his rights under the policy; in which event, his right to recover against the insurer is generally measured by the coverage of the policy and the reasonableness of the settlement." (citations omitted) [6]

After an insurance carrier has unjustifiably refused to defend an insured, the insured should not have to risk a full trial. "Why should the assured be required to wait until after the storm before seeking refuge." *Trader & Gen. Ins. Co. v. Rudco Oil and Gas Co.*, 129 F.2d 621, 627 (10th Cir. 1942). The insurer's breach releases the insured from the "actual trial" requirement, and he should

6. Accord, *Jones v. Southern Surety Co.*, 210 Iowa 61, 69, 230 N. W. 381, 385–86 (1929)

"By so violating its duty and waiving its right to defend, . . . [the insurer] authorized the insured to conduct the defense *in good faith and thereunder in good faith to make* such settlement as ordinary or reasonable prudence and caution might dictate to be advisable, and waived the right to demand prosecution of the action to final judgment. Settlement made by the insured in good faith in circumstances not raising an inference of imprudence is presumptive evidence of liability and of the amount thereof." (citations omitted)

be permitted to effect a good faith settlement. I see no reason this principle should not apply because the insurance company's failure to defend would have been excused under prior cases. The insured should not be forced to litigate the issues of liability and damages after he has settled in good faith.

Although the issues of the insured's liability and the injured party's damages may be relevant to the determination whether a settlement was made in good faith, they are not controlling. If, for example, there was some doubt as to the insured's liability, but a risk of substantial damages, the insured should not be penalized for a reasonable settlement. The standard is not whether the insured or the injured party can establish liability in the action against the insurer, but whether in the circumstances of the case, it was reasonable to settle the claim. E. g. *Butler Bros. v. American Fidelity Co.*, supra. Since there was no reason to determine whether the settlement between Brakeman and the insured was made in good faith, I would remand to afford the parties an opportunity to present evidence on this issue.

I would therefore remand to determine (1) whether Potomac was prejudiced by the late notice and (2) whether the settlement was reached in good faith. Unlike the majority, I would not allow Potomac to directly litigate the issues of its insured's liability and the amount of Brakeman's damages as long as the settlement was entered into in good faith. A limited remand is more consonant with the public policy of encouraging settlements and avoiding unnecessary litigation.

POMEROY, Justice, dissenting.

The Court today holds "that where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the grounds of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach

resulted in prejudice to its position." Opinion of the Court, *ante* at 198. I agree with the majority, although for different reasons, that in the absence of prejudice an insurance company should not be able to avoid liability solely on the ground that the notice of accident was not timely. I cannot agree, however, that if a breach of a notice provision is proved, the burden of demonstrating prejudice to defense of a claim should be borne by the insurer. In short, I am of the view that the Superior Court's holding was correct.[1]

## I.

The majority correctly observes that prior to the instant decision, Pennsylvania law, employing traditional contract principles, upheld the validity of a clause in an insurance policy requiring written notice of accident to be given "as soon as practicable." Opinion of the Court, *ante* at 195 and cases cited. Moreover, the policy provision that compliance with such a clause was a condition precedent to recovery was literally enforced, resulting in relieving the insurer of the liability which might otherwise been imposed. *Id.* This was on the theory that breach of the notice requirement raised a conclusive presumption that the insurer was prejudiced, irrespective of whether the insurer had in fact suffered prejudice. *Meierdierck v. Miller*, 394 Pa. 484, 486, 147 A.2d 406, 408 (1959); *Ross v. Mayflower Drug Stores, Inc.*, 338 Pa. 211, 215, 12 A.2d 569, 571 (1940). The important question in cases litigated under prior law was whether the insured breached the prompt notice clause.

---

1. A majority of the Superior Court held that

" . . . [L]ate notice to a liability insurer of an event possibly leading to claims against the coverage, in violation of a policy provision requiring prompt notice, and in the absence of extenuating circumstances, creates a presumption of prejudice to the insurer. . . . [T]his presumption of prejudice may be overcome by proof by the claimant that the insurer was not prejudiced by the tardy notice." *Brakeman v. Potomac Ins. Co.*, 236 Pa.Super. 320, 328, 344 A.2d 555, 559 (1975).

As the majority notes, our case law interpreted "as soon as practicable" in a flexible fashion, taking into account the facts and circumstances of each case, and gave due regard to extenuating circumstances where notice was delayed. Opinion of the Court, *ante* at 195, 196 and cases cited.

In support of today's decision to depart from the so-called "strict contractual approach" of our past decisions, opinion of the Court, *ante* at 196, the majority offers several reasons: "an insurance contract is not a negotiated agreement," *id.* at 196; enforcing the notice clause as a condition precedent involves a forfeiture, *id.* at 196, 197; and for an insurer to be released from liability due solely to late notice in a situation where no prejudice is shown to the insurer's position does not "comport with the reasonable expectations of those who purchase insurance policies," *id.* at 198 (footnote omitted). I find myself unable to accept this rationale in its entirety. While some courts have chosen to reject traditional contract principles in interpreting insurance policies, I perceive no reason to do so in wholesale fashion. Indeed, a majority of the jurisdictions in this country still adhere to the traditional approach. *See* Annot., 18 A.L.R.2d 443 (1951); 8 J. Appleman, *Insurance Law and Practice*, § 4732 (1962), and cases cited therein. Moreover, under the unnecessarily broad and sweeping language of the majority in this case, virtually any clause in an insurance contract could easily be held to be unenforceable, even though it is neither unconscionable nor against public policy. I therefore cannot join in the majority's analysis in the case at bar. Thus is not to say, however, that some change in our prior law is not called for in light of the practices and expectations that presently characterize the purchasing of liability insurance.

The starting point for analysis of any rule of law lies in an examination of its purpose. The purpose of a requirement that an insurer be given reasonably prompt

notice of accident was described in *Hachmeister, Inc. v. Employers Mutual Liability Ins. Co.*, 403 Pa. 430, 433, 169 A.2d 769, 770 (1961): "The 'reasonable notice clause' is designed to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of all, and to be able to make a timely defense against any claim filed. [Citation omitted]. The possibility that a settlement or a verdict more favorable to an insurer might be achieved if prompt notice had been received by it, cannot be discounted." A somewhat fuller statement of purpose of a notice provision in an insurance policy has been given by a well-known commentator as follows:

> "The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim, is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation." 8 J. Appleman, *Insurance Law and Practice*, § 4731 at 2–3 (1962) (footnotes omitted).

Finally, as Professor Keeton has observed, *prompt notice clauses serve broad social interests as well*:

> "[T]he purpose of the requirement of notice is to give the insurer reasonable opportunity to protect its rights. In so doing, however, the insurer is sometimes

protecting the interests of the particular insured in the instant case as well and often is serving the best interests of its insureds as a group. Thus problems involving enforcement of such provisions cannot properly be regarded as raising merely issues of competing interests between the insurer and the insured in the particular case.

\* \* \* \* \* \* \* \*

"The interests of insureds generally and the public interest may also be served in some instances in which the requirement of prompt notice is a disadvantage to the insured in the instant case. Under any type of insurance, early investigation reduces the risk of successful fraudulent claims. This is a disadvantage to the specific claimant, who often is also the insured, but it is a disadvantage fully supportable in the public interest.

\* \* \* \* \* \* \* \*

"Provisions designed to require timely presentment of claims . . . are advantageous to insurers and insureds . . . in the control of claims in a very broad sense. First, they reduce the overall cost of the coverage below what it would be in the absence of such provisions. . . . Second, they reduce the burden of providing reserves for undetermined claims by reducing the period and degree of uncertainty concerning the number of claims . . . and their amounts . . .." R. Keeton, *Insurance Law—Basic Text*, § 7.2(a) at 445–46 (1972) (footnotes omitted).

It is clear, therefore, that prompt notice clauses serve significant and indeed necessary purposes, and to my mind are in no way unreasonable or contrary to public policy. Recognizing the validity of these purposes, however, should not serve to relieve an insurer of its obligations under the policy or to deprive an insured of coverage if in a particular case the purposes of the notice clause have in fact been satisfied, albeit the notice is untimely. Thus if the insurer is not prejudiced by a tardy

notice, so that it can make as effective a defense or settlement as it could have made had timely notice been given, the purposes of the clause are fulfilled and the insurer should not, solely because of untimeliness of notice, be relieved from its contractual obligations. Thus insofar as a majority holds that prejudice to the insurer is a "material factor in determining whether to relieve the insurance company of its coverage obligations by virtue of late notice," opinion of the Court, *ante* at 195, 196, I concur in the opinion.

## II.

The Court holds, however, not only that prejudice to the insurance carrier is a prerequisite to avoidance of carrier liability in notice of accident cases, but also that the burden of affirmatively proving such prejudice is upon the carrier. In so holding the majority reasons that "[i]n view of the facts that an insurance contract is not a truly consensual agreement, that what is involved is a forfeiture and it is the insurance company who chooses to disclaim its obligations under the policy, it is more equitable to place the burden of showing prejudice on the insurance company." Opinion of the Court, *ante* at 198 (footnote omitted). I must disagree.

First, while it is no doubt true that an insurance contract is not negotiated in the traditional sense, it does not automatically follow that any or all of its terms are unconscionable or unreasonable or that they do not coincide with the parties' intentions. As noted above, prompt notice provisions are not only reasonable and necessary, but they also serve to protect the interests of individual insureds and insureds as a group. Moreover, the fact that the ultimate result of any given case may be a "forfeiture" is no reason to allocate the burden to one party or another. In fact, the new requirement that lack of timely notice be prejudicial to the insurer before liability is excused is designed to prevent unjust forfeitures of cov-

erage. Finally, while the carrier is indeed seeking to avoid or minimize liability, the insured is also seeking to avoid, without reasonable excuse, the plain and unambiguous terms of the policy upon which coverage in the first instance was granted. In short, the mere invocation of such concepts as adhesion contracts, forfeiture, and avoidance of liability should not be held determinative of the issue.

To my mind, it makes far more sense, both in terms of equity and the realities of an accident situation to require the insured to demonstrate that unreasonable delay in giving notice of accident, unexcused by any extenuating circumstances, was not prejudicial to the insurer's position. Appleman puts the matter in perspective:

"Many courts have adopted the rule that it is unnecessary for the company to show that it was prejudiced by the neglect of the insured in order to assert this policy defense, it being frequently stated that prejudice is presumed under these circumstances. This does not mean that upon a showing of delay, alone, the insurer walks out of court free of potential claims. It means, rather, that prejudice being a difficult matter affirmatively to prove, it is not required to make such proof. Prejudice may be presumed, with the burden upon the one seeking to impose liability to show that no prejudice did, in fact, occur—for example, that a complete investigation was made by another insurer or by competent persons who turned over the results to the 'late notice' insurer.

"A few courts, however, have adopted a so called rule of 'substantial prejudice' which requires that the insurer, in order to be relieved of liability, demonstrate that it was materially and substantially hampered in the making of its defense or in the discovery of facts by the lack of timely notice. Since it is often impossible for the insurer to know what witnesses it would have found or what facts it could have ascer-

tained had immediate notice been given and a prompt investigation made, it is submitted that this test is unworkable. The burden should be placed upon the one seeking to recover." 8 J. Appleman, *Insurance Law and Practice* § 4732 at 15–19 (1962) (footnotes omitted).

As Judge Van der Voort for the Superior Court majority observed, "The thoughts of [Appleman] are sound. Placing the burden of proving prejudice upon the insurer would essentially be similar to requiring it to disprove a negative. The insurer's *lack of knowledge* of particular facts helpful to a defense may also operate to make it impossible for the insurer to show the underlying prejudice." *Brakeman v. Potomac Ins. Co., supra* at 327, 344 A.2d at 558 (emphasis in original). *See also* Note, Liability Insurance Policy Defenses and the Duty to Defend, 68 Harv.L.Rev. 1438 (1955). Indeed, the majority of this Court concedes that "prejudice is a difficult matter for the insurance company to prove affirmatively. . . ." Opinion of the Court, *ante* at 198. In contrast, while it may well be difficult for an insured to demonstrate a lack of prejudice, common sense indicates that the insured will have more relevant facts within its knowledge concerning the accident than an untimely notified carrier, and therefore will be in a better position to meet its burden of proof. Moreover, it should be remembered that it is the insured who is seeking to be excused from failure to comply with the timely notice requirement of the policy. I have no doubt whatever that it is more equitable to place the burden of proof on the breaching party than on the other. *See* Restatement of Contracts, Second, Section 255 (Tentative Draft # 7, 1972) ; *Brakeman v. Potomac Ins. Co., supra* at 332–33, 344 A.2d at 561 (Cercone, J., concurring).

For the reasons stated, I would affirm the order of the Superior Court granting a new trial, but with the burden of proof allocation as stated in the majority opinion of the Superior Court.