## Cornett v. Curd

*Michael W.H. Duncan* and *W. Robert Landis*, for plaintiffs.
*Michael d. Carr*, for defendant.

WOOD, *J.*, September 10, 1981—This matter involves questions of insurance law which should be addressed with some care, since their importance extends beyond this immediate suit. However, before getting to those questions, it is first important to be precise about the procedural context in which we find ourselves.

The matter is before the court on the petition of counsel for both defendants to withdraw his ap-

pearance on behalf of one defendant, Daniel L. Curd. An answer was filed to that petition which traverses some of the allegations of the petition, but the denials appear to be more in the nature of denials of legal conclusions rather than of factual averments. Our own reading of the petition (actually, an amended petition filed following oral argument) and answer convinces us that no material facts are at issue which would require depositions or affidavits, and hence we may go ahead and dispose of the matter on petition and answer alone. See Pa.R.C.P. 209.

The petition and answer show that on November 26, 1977, plaintiff, Cornett, was a passenger in an automobile owned by defendant, Delores Curd, and driven by her then husband, Daniel Curd. At the time of the accident, Delores Curd was insured by Nationwide Insurance Company, and Daniel Curd was presumably a "covered Person" under the Nationwide policy because he was a "family member" of the insured. Following commencement of suit, Michael d. Carr of our Bar, petitioner herein, entered his appearance on behalf of both defendants at the behest of Nationwide Insurance Company.

Subsequent to entering his appearance, petitioner apparently determined that since Daniel Curd was using Delores Curd's vehicle "without a reasonable belief that he was entitled to do so," Nationwide could deny coverage under one of the exclusions contained in the policy. Additionally, when Nationwide attempted to gain the cooperation of Daniel Curd in defending this suit, it received none. Nationwide then took the position that it owed Daniel Curd neither a defense nor coverage, and instructed petitioner to withdraw his appearance on behalf of Daniel Curd.

We consider it important to note that the present petition is simply one filed on behalf of a lawyer to withdraw from representation from an uncooperative client. The petition does not necessarily put in issue the question of whether or not Nationwide is obliged to defend Daniel Curd as well as Delores Curd, or whether or not Nationwide could deny coverage in the event that a judgment is obtained against Daniel Curd. However, at the same time, it is perfectly obvious that those are the real issues in the case. Because of the position that Nationwide has taken on those issues, it now seeks to have petitioner withdraw. We consider that it is proper to address the question of coverage in the course of this opinion.

There is no question but that prior to the passage of the "Pennsylvania No-fault Motor Vehicle Insurance Act," Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq., insurance coverage for one's motor vehicle was traditionally considered to be a matter strictly between the purchaser of the insurance and the insurance company, and that the tools of analysis of standard contract law predominated in solving problems of coverage. A plaintiff in a trespass action had no interest in the withdrawal of defense counsel unless withdrawal delayed the disposition of his case: Cohen Appeal, 182 Pa. Superior Ct. 399, 128 A. 2d 114 (1956). See also Schmittinger v. Grogan, 402 Pa. 499, 166 A. 2d 524 (1961). Spears v. Dawson, 10 D. & C. 3d 703 (1979), at 708, n.1, is the most recent of the "traditional" cases of which we are aware, and comes to the conclusion that "The insurance company's duty is only to the insured." Hence, if, as is alleged here, it could be shown that the contract of insurance did not cover a specific defendant, then the insurance company is not liable with respect to that

defendant. Even though the contract may unitially have covered a defendant, that defendant's failure to cooperate with his insurance company was deemed a breach of contract permitting the insurance company to deny coverage: Spears, supra.

However, in 1974, as noted, the legislature adopted the No-fault Motor Vehicle Insurance Act, which provided in section 104 thereof that:

"(a) Security covering a motor vehicle.—Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. Security shall be provided for the payment of basic loss benefits, and for the payment of sums up to a total limit of thirty thousand dollars ($30,000) which the owner or any person operating the vehicle with the express or implied permission of the owner may become liable to pay as damages because of bodily injury or death arising out of any one accident (subject to a sublimit of fifteen thousand dollars ($15,000) for damages arising out of the bodily injury or death of any one person) and for the payment of damages for injury to or destruction of property in any one accident of amounts up to a total limit of five thousand dollars ($5,000)."

These provisions must be interpreted in light of the stated purpose of the act "to establish at reasonable cost of the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. §1009.102(b).

Generally speaking, the no-fault statute envisions two kinds of insurance coverage for those

injured in automobile accidents: protection against basic losses which is provided by the insurer of one's own vehicle, and liability for more severe losses based on the fault principles of traditional tort law. What section 104 of the No-fault act has done has been to say that the courts should no longer view insurance coverage as a matter of voluntary contract between the insurer and the insured. Car owners must now obtain liability coverage for victims before they may register their cars. The insurance company's obligation runs to the victim as much as, if not more than, it runs to the insured. Section 104 says that the security which shall be provided is payable on behalf of the owner or one operating with the owner's permission to one to whom the operator shall become liable. Nothing in the statute makes coverage contingent upon whether the operator cooperates.

Our research has failed to disclose any helpful appellate decisions on this point. We do note that our State Supreme Court is abandoning the traditional contract approach in viewing the obligations of insurers under insurance contracts: see, e.g. Brakeman v. Potomac Insurance Company, 472 Pa. 66, 371 A. 2d 193 (1977); August v. Stasak, 492 Pa. 550, 424 A. 2d 1328 (1981); and Cohen v. Erie Indemnity Company, _____ Pa Superior Ct. _____, 432 A. 2d 596 (1981). We believe that as our courts commence to anaylze insurance coverage disputes under Section 104, the force of the "traditional" cases will dissipate, and new statements of insurance company obligations will emerge which will give teeth to the policies of Section 104.

Hence, our conclusion in this matter is that Mr. Carr may withdraw if he wishes. However, his withdrawal, or our sanctioning of his withdrawal, should not be construed as implicit approval of

Nationwide's position regarding coverage. That question remains open.

ORDER

And now, September 10, 1981, leave is granted to petitioner to withdraw as counsel. If he wishes to withdraw, he may do so by praecipe filed with the prothonotary.