546 A.2d 1327

N. Adele Finkbiner and J. Harry Finkbiner, Petitioners *v.* Medical Professional Liability Catastrophe Loss Fund and Thomas J. Judges, Sr., and Harry J. Keogh, Respondents.

Argued June 14, 1988, before Judges CRAIG, BARRY and SMITH, sitting as a panel of three.

*Stephen R. Kurens*, with him, *Arnold M. Kessler, Arnold M. Kessler Associates,* for petitioners.

*Claudia M. Tesoro*, Deputy Attorney General, with her, *John G. Knorr, III*, Chief Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General, for respondents.

OPINION BY JUDGE CRAIG, September 1, 1988:

N. Adele and J. Harry Finkbiner filed a complaint, in this court's original jurisdiction, to recover money from the Medical Professional Liability Catastrophe Loss Fund, (CAT Fund) its director, Thomas J. Judges, and a claims examiner, Harry J. Keogh.

The issue, raised by the Commonwealth's demurrer, is whether the CAT Fund can be liable for a bad faith refusal to settle, like a private insurer. This court will sustain the demurrer.

In considering preliminary objections, in the nature of a demurrer, this court must accept as true all well pleaded averments in the Finkbiners' complaint. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976). Moreover, a court should grant a demurrer only when the law clearly permits no recovery under the allegations pleaded. *Commonwealth v. Monumental Properties*, 459 Pa. 450, 329 A.2d 812 (1974).

The facts as pleaded by the Finkbiners are as follows: The Finkbiners brought a malpractice action against Dr. Mauriello, for injuries suffered by Mr. Finkbiner during a surgical procedure. Dr. Mauriello, as required by Section 701 of the Health Care Services Act, Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.701, was insured for liability up to $100,000 by the Medical Protective Company and had excess coverage of $1,000,000 through the CAT Fund. In accordance with the Act, Dr. Mauriello's counsel informed the CAT Fund that the Finkbiners' claim could exceed the $100,000 limit. Some time before trial, Dr. Mauriello conceded liability and his insurance company tendered the policy limits to the Finkbiners. Negotiations began between counsel representing the Finkbiners, Dr. Mauriello and the CAT Fund. Shortly before trial the CAT Fund offered to settle the case for $500,000. The Finkbiners refused and demanded

$3,000,000. The CAT Fund increased its offer to $900,000 but the Finkbiners refused to settle for less than $1,000,000. Counsel for Dr. Mauriello repeatedly advised the CAT Fund to settle for $1,000,000. The CAT Fund refused and the case went to trial. The jury returned a verdict in favor of the Finkbiners for more than $2,000,000. The CAT Fund paid the Finkbiners $1,000,000. Thus, Dr. Mauriello remains liable to the Finkbiners for approximately $950,000 for the jury verdict and another $600,000 in delay damages imposed by the judge.

The Finkbiners, asserting the rights of Dr. Mauriello, who assigned his rights to them, have brought this case against the CAT Fund to recover the amount of Dr. Mauriello's outstanding liability to the Finkbiners, based on the CAT Fund's alleged bad faith refusal to settle the malpractice suit.

The Commonwealth, in support of its demurrer, contends that, because a bad faith refusal to settle a case is a cause of action that sounds in contract, jurisdiction for this suit is with the Board of Claims. Second, the Commonwealth asserts that the CAT Fund cannot be liable for bad faith refusal to settle a case because, in paying the $1,000,000, it has discharged its full obligation under the Act. Finally, the Commonwealth asserts that, should this court consider the Finkbiners' cause of action as one based in negligence, the suit is barred on the basis of sovereign immunity.

In *Cowden v. Aetna Casualty and Surety Company,* 389 Pa. 459, 134 A.2d 223 (1957), the Pennsylvania Supreme Court first recognized the cause of action of bad faith refusal to settle. In so doing the court stated:

[A]n insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation of the

policy, if the insurer's handling of the claim, including failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its *contractual duty.*

*Id.* at 468, 134 A.2d at 227 (emphasis added).

In *Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55, 59, 188 A.2d 320, 322 (1963), our Supreme Court again recognized the bad-faith refusal-to-settle cause of action as one that arises from the fiduciary position that the insurer assumes when the policy calls for the insurer to handle all pertinent claims against the insured.

Thus, the cause of action for bad faith refusal to settle is one that is based on a contractual and fiduciary relationship.

Section 701(a) of the Health Care Services Act[1] provides:

Every health care provider as defined by this act, practicing medicine . . . in the Commonwealth shall insure his professional liability only with an insurer licensed or approved by the Commonwealth of Pennsylvania.

Moreover, section 701(1)(i) of the Act requires that all health care providers must insure their professional liability in the amount of $100,000 per occurrence and $300,000 per annual aggregate, in order to participate in the CAT Fund. All health care providers must participate in the CAT Fund or their license will be suspended or revoked. Section 701(f) of the Health Care Service Act. Finally the CAT Fund levies a surcharge that each health care provider must pay to participate. Section 701(e)(1) of the Health Care Service Act.

---

[1] 40 P.S. §1301.701(a).

For a contract to exist there must be an offer and an acceptance which signify a meeting of the minds. Without such assent there is no contractual relationship. *Triffin v. Thomas,* 316 Pa. Superior Ct. 273, 462 A.2d 1346 (1983). The language of the statute requires all health care providers to participate in the CAT Fund in order to practice medicine in the Commonwealth. The providers' participation in the CAT Fund is not a consensual one, but is one that is required by statute. As such, there is no mutual assent between the parties and therefore no contractual relationship between a provider and the CAT Fund, as exists between an insurer and an insured.

Accordingly, because there is no contractual relationship between the CAT Fund and Dr. Mauriello, the Board of Claims cannot have jurisdiction over the matter. *Department of Revenue, Bureau of State Lotteries v. Irwin,* 82 Pa. Commonwealth Ct. 266, 475 A.2d 902 (1984).

Moreover, because there is no contractual relationship between Dr. Mauriello and the CAT Fund, the Finkbiners cannot recover upon a cause of action of bad faith refusal to settle.

Unlike in *Cowden* and *Gray,* where the policy contained a provision under which the insurer asserted the right to handle all claims against the insured, section 702(f) of the Act, 40 P.S. 1301.702(f), merely provides that, "the director is authorized to defend, litigate, settle or compromise any claim payable by the fund." There is no requirement that the director actually use those powers, and in this case, the Fund never offically asserted its right to handle the claim against Dr. Mauriello. Thus, unlike the fiduciary relationship between the insurer and the insured, created by the terms of the policy, in *Cowden* and *Gray,* the CAT Fund owes no fiduciary duty to Dr. Mauriello.

Finally, Section 701(d) of the Act provides:

The limit of the liability of the fund shall be $1,000,000 for each occurrence for each health care provider.

The legislature, in enacting the Health Care Services Act and creating the CAT Fund, has created a specific exception to the general rule of sovereign immunity, which allows a person to recover money from the CAT Fund, but limits the amount of recovery to $1,000,000 for each occurrence for each provider. The legislatively mandated limit of $1,000,000 is, by its terms, conclusive as the maximum amount the CAT Fund can pay for any occurrence for one provider. Therefore the CAT Fund's obligation to Dr. Mauriello as a participant was met when the Fund paid the $1,000,000.

Accordingly, we sustain the preliminary objections of the Commonwealth, and dismiss the Finkbiners' complaint with prejudice.

## ORDER

NOW, September 1, 1988, the preliminary objections of the Commonwealth are sustained, and the Complaint of N. Adele and J. Harry Finkbiner, filed at No. 381 C.D. 1988, is dismissed with prejudice.