## PENNSYLVANIA MEDICAL SOCIETY LIABILITY INSURANCE COMPANY, Petitioner,

v.

## COMMONWEALTH of Pennsylvania, MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 12, 2002.

Decided Aug. 19, 2002.

As Amended Sept. 18, 2002.

---

Kenneth A. Murphy, Philadelphia, for petitioner.

Zella Smith Anderson, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) to a two-count petition for review filed by the Pennsylvania Medical Society Liability Insurance Company (Insurance Company) requesting us to dismiss the petition because the Insurance Company failed to file its claim within the requisite 180 days and the petition does not make out a claim for bad faith.

This case involves the CAT Fund which provides coverage in excess of a health care provider's basic liability insurance coverage. The Insurance Company is a corporation that issues professional liability insurance policies to physicians and other health care providers. The Insurance Company filed a petition for review in the nature of a two-count complaint against the CAT Fund seeking, *inter alia*, coverage for non-party health care providers under Section 605 of the Health Care Services Malpractice Act (Act) after the CAT Fund denied its request for Section 605 status on the grounds that it failed to file a claim within 180 days.[1] In Count I of the complaint, the Insurance Company alleged that its request could not be denied unless the CAT Fund had been prejudiced by an untimely request. In Count II of the complaint, the Insurance Company alleged bad faith by the CAT Fund based upon its denial of the Section 605 status. The CAT Fund preliminarily objects in the nature of a demurrer to both counts of the petition for review, arguing that the Insurance Company did not provide it with notice within the 180–day requirement and, therefore, it was not required to make payment of the Insurance Company's claim, and it was not guilty of bad faith for refusing to make payment.

## I.

■ Section 605 of the Act provides:

In the event that any claim is made against a health care provider subject to the provisions of Article VII more than four years after the breach of contract or tort occurred which is filed within the statute of limitations, such claim shall be defended and paid by the fund if the fund has received a written request for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer.

The Insurance Company argues that notwithstanding the 180–day requirement in Section 605 of the Act, Section 702(c) of the Act adds the requirement that the CAT Fund could not deny its request unless it had been prejudiced by the untimely request. The CAT Fund, however, argues that Section 702(c) did not remove the 180–day limitation, and if the legislature had intended a requirement of prejudice with respect to untimely claims under Section 605, it would have provided for one.

Section 702(c) of the Act provides:

The basic coverage insurance carrier of self-insured provider shall promptly notify the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's coverage or self-insurance plan **or falls under section 605** .... Failure to so notify the director shall make the basic coverage insurance carrier or self-insured provider responsible for the payment of the entire award or verdict, **provided the fund has been prejudiced by the failure of notice.**

40 P.S. § 1301.702(c). (Emphasis added.) Despite the CAT Fund's contention that it was the intent of the General Assembly that 180 days would be the absolute cut-off for requesting coverage under Section 605 of the Act, the plain language of Section 702(c) provides that any notification requesting coverage under Section 605 will not make the basic insurance carrier liable unless prejudice is shown.

Not only is the CAT Fund's interpretation not in accord with the plain language

---

1. Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. § 1301.605.

of Section 702(c), but it is at variance with how notice provisions are interpreted when contained in insurance policies and notice requirements contained in legislation. In *Brakeman v. Potomac Insurance Company*, 472 Pa. 66, 371 A.2d 193 (1977), our Supreme Court stated:

> The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected. Therefore, unless the insurer is actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision.

*Id.* at 197 (quoting *Miller v. Marcantel*, 221 So.2d 557 (La.App.1969)).

**2.** 42 Pa.C.S. § 5522 provides in relevant part:
(a) Notice prerequisite to action against government unit-
 (1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth ˙or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 ... or otherwise shall file in the office of the government unit, and if the action is against a Commonwealth agency for damages, then also file in the office of the Attorney General, a statement in writing, signed by or on his behalf, setting forth:
 (i) The name and residence address of the person to whom the cause of action has accrued.
 (ii) The name and residence address of the person injured.

Additionally, 42 Pa.C.S. § 5522[2] requires a party to file a claim against a government unit within six months or be barred unless the party shows a reasonable excuse for failing to timely file. Even though this section does not have a provision similar to Section 702(c) of the Act, this section has been interpreted by this Court to also require a showing of prejudice in order for the government unit to refuse to accept a claim filed against it after the six-month time frame. *See Leedom v. Commonwealth, Department of Transportation*, 699 A.2d 815 (Pa.Cmwlth. 1997). Because no prejudice was alleged in this case, the Insurance Company's claims are not barred as a matter of law and the CAT Fund's preliminary objections to Count 1 of the complaint are overruled.

## II.

 As to Count II of the complaint, the Insurance Company alleged that the CAT Fund acted in bad faith by unreasonably withholding benefits under Section

 (iii) The date and hour of the accident.
 (iv) The approximate location of where the accident occurred.
 (v) The name and residence or office address of any attending physician.
 (2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon within this Commonwealth or elsewhere. The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement.

605 of the Act, and that the CAT Fund acted in violation of Section 8371(2) of the Judicial Code, 42 Pa.C.S. § 8371(2) and/or the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).[3] In its preliminary objections, the CAT Fund argues that because there exists no common law remedy for a claim of bad faith against an insurer in Pennsylvania, the Insurance Company's bad faith claim can only be based upon Section 8731 of the Judicial Code, and the Insurance Company has failed to plead several essential elements required by that statute.

In *Williams v. Nationwide Mutual Insurance Company*, 750 A.2d 881 (Pa.Super.2000), the Superior Court held that common law claims for bad faith on the part of insurers were not remediable in Pennsylvania, and only statutory claims of bad faith were actionable under Section 8371 of the Judicial Code. Section 8371 of the Judicial Code provides:

In an action arising under *an insurance policy*, if the court finds that *the insurer* has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorneys fees against the insurer.

42 Pa.C.S. § 8371.[4] (Emphasis added.)

■ The CAT Fund contends and we agree that the Insurance Company has failed to plead a bad faith claim because the statute requires that an action be brought under an insurance policy, and the CAT Fund is not an insurer but a statutorily-created executive agency designed only to provide the coverage enumerated in the Act. *See Finkbiner v. Medical Professional Liability Catastrophe Loss Fund*, 119 Pa.Cmwlth. 243, 546 A.2d 1327 (1988), *affirmed*, 523 Pa. 101, 565 A.2d 157 (1989); *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), *petition for allowance of appeal denied*, 546 Pa. 635, 683 A.2d 875 (1996). Further, only the insured may institute a bad faith claim against the insurer under the statute, *Marks v. Nationwide Insurance Company*, 762 A.2d 1098 (Pa.Super.2000), *petition for allowance of appeal denied*, 567 Pa. 751, 788 A.2d 381 (2001), and the dispute in this case is not with the insured but between the insured's carrier, the Insurance Company, and the CAT Fund. Because

---

**3.** Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201–1—201–9.2.

**4.** "Bad faith" has been described as follows: "Bad faith" on [the]part of [an]insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Moreover, when evaluating bad faith under section 8731, a trial court may look to (1) other cases construing the statute and the law of bad faith in general, (2) the plain meaning of the terms in the statute, and/or (3) other statutes addressing the same or similar subjects.

*MGA Insurance Company v. Bakos*, 699 A.2d 751, 754–55 (Pa.Super.1997) (internal citations omitted).

the CAT Fund is not an insurer and this action is not brought by the insured parties, the Insurance Company has not set forth a claim of bad faith under Section 8371 of the Judicial Code.

■ The CAT Fund also argues that the Insurance Company has failed to state a claim for bad faith under the UTPCPL because the services it provides are of a commercial nature. The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. *Burke v. Yingling*, 446 Pa.Super. 16, 666 A.2d 288 (1995). Section 9.2 of the UTPCPL provides that any person "who purchases or leases goods or services primarily for personal family or household purposes" and suffers an ascertainable loss as a result of a practice declared unlawful under the statute may bring a private cause of action to recover damages. 73 P.S. § 201–9.2. Because the Insurance Company's services as well as CAT Fund coverage are of a commercial nature and are not intended to serve family, personal or household purposes, there is no basis under the UTPCPL for the Insurance Company's bad faith claim.

Accordingly, the CAT Fund's preliminary objections to Count I of the petition for review are overruled but are sustained as to Count II.

### ORDER

AND NOW, this 19th day of August, 2002, the preliminary objections filed by the Medical Professional Liability Catastrophe Loss Fund are overruled as to Count I of the Petition for Review filed by the Pennsylvania Medical Society Liability Insurance Company but are sustained as to Count II of the Petition for Review. This court is of the opinion that this order as to Count I involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this matter.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority overrules the preliminary objection of the Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund (CAT Fund) to Count I of the petition for review filed by the Pennsylvania Medical Society Liability Insurance Company (Insurance Company). The CAT Fund's objection is that, contrary to Count I, the CAT Fund is not obligated to pay or defend any claim for the Insurance Company under section 605 of the Health Care Services Malpractice Act[1] (Act) because the CAT Fund did not receive a written request from the Insurance Company within the requisite 180–day period. In overruling the CAT Fund's preliminary objection, the majority holds that section 702(c) of the Act[2] negates the 180–day written request requirement in section 605 of the Act.[3] For the reasons that follow, I do not agree with this holding.

In 1976, the General Assembly rewrote section 702(c) of the Act to provide as follows:

(c) The basic coverage insurance carrier or self-insured provider shall *promptly notify* the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's cover-

---

1. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.605, *repealed by*, Act of March 20, 2002, P.L. 154.

2. 40 P.S. § 1301.702(c), *repealed by*, Act of March 20, 2002, P.L. 154.

3. The majority's analysis indicates its conclusion that section 702(c) of the Act controls the outcome in this case. (*See* majority's op. at 1269–70.) Thus, the majority completely ignores the 180–day written request requirement in section 605 of the Act.

age or self-insurance plan or *falls under section 605* .... Failure to so notify the director shall make the basic coverage insurance carrier or self-insured provider responsible for the ***payment*** of the entire award or verdict, *provided that the fund has been prejudiced by the failure of notice.*

40 P.S. § 1301.702(c) (emphases added), Historical and Statutory Notes. At the same time, the General Assembly rewrote section 605 of the Act to provide, "In the event that any claim is made against a health care provider ... more than four years after the breach of contract or tort occurred ..., such claim shall be defended and paid by the [CAT Fund]...." *See* 40 P.S. § 1301.605, Historical and Statutory Notes. Thus, under the 1976 amendments to the Act, if an insurer's or self-insured's failure to give prompt notice of a section 605 claim did not prejudice the CAT Fund, the CAT Fund was responsible for defense and payment of the claim.

In 1996, the General Assembly amended section 605 of the Act to add the 180–day written request requirement.

In the event that any claim is made against a health care provider ... more than four years after the breach of contract or tort occurred ..., such claim shall be defended and paid by the fund *if the fund has received a written request for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer.*

40 P.S. § 1301.605 (emphasis added), Historical and Statutory Notes. The majority's holding gives no effect to the 1996 amendment. Indeed, the majority's holding reflects the 1976 version of sections 702(c) and 605 of the Act. However, it makes no sense that the General Assembly would add the 180–day requirement without intending to change the obligation of a health care provider or insurer under sec-

tion 605 of the Act. Indeed, I submit that the majority's holding is contrary to several of the rules of statutory construction.

Section 1921(a) of the Statutory Construction Act of 1972 states, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions," so that no provision is mere surplusage. 1 Pa.C.S. § 1921(a). Section 1922(2) of the Statutory Construction Act of 1972 states that, in ascertaining the intention of the General Assembly, we presume that the General Assembly "intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). The majority's construction of section 605 of the Act violates these rules because it does not give effect to the 180–day written request requirement.

The majority's holding also violates section 1921(b) of the Statutory Construction Act of 1972, which states, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The language of section 605 contains no ambiguity with respect to the 180–day written request requirement. Section 605 provides that the CAT Fund will defend and pay a section 605 claim *if* the fund receives a written request for indemnity and defense within the 180–day period. 40 P.S. § 1301.605. The majority's holding disregards these clear and unambiguous words.

The majority's holding also violates section 1933 of the Statutory Construction Act of 1972, which states:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the *special provisions*

*shall prevail and shall be construed as an exception to the general provision,* unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933 (emphasis added). Here, section 702(c) of the Act is a general provision relating to the typical case where the CAT Fund is responsible for claims that exceed the basic insurer's coverage. 40 P.S. § 1301.702(c). Section 605 of the Act is a special provision relating to the unusual case where a claim is filed more than four years after the breach of contract or tort occurred. 40 P.S. § 1301.605. In those special cases, the General Assembly requires a written request to the CAT Fund within 180 days of the date when the claim was known to the healthcare provider or insurer. 40 P.S. § 1301.605. Because the General Assembly did *not* enact section 702(c) of the Act later than the 180–day written request requirement, that requirement should prevail as an exception to the general rule.

For all of these reasons, I would sustain the CAT Fund's preliminary objection to Count I of the petition for review.[4]

Judge LEADBETTER joins in this dissent.

---

**4.** It is important to note that, in Count I of its petition for review, the Insurance Company seeks both *payment* of the section 605 claim *and* the cost of *defending* the claim. However, section 702(c) of the Act, the basis for the majority's holding, pertains only to the CAT Fund's obligation to *pay* a claim; section 702(c) has nothing to do with the CAT Fund's duty to *defend* a claim. It is section 702**(d)** of the Act, ignored by the majority, that governs the CAT Fund's responsibility to provide a defense to a claim.

(d) The basic coverage insurance carrier or self-insured provider shall be responsible to provide a *defense* to the claim, including defense of the fund, *except as provided for in section 605.* In such instances where the director has been notified in accordance with subsection (c), the director *may* join in the defense and be represented by counsel. 40 P.S. § 1301.702(d). To the extent that the majority fails to address section 702(d) of the Act, the majority has not fully disposed of the CAT Fund's preliminary objection to Count I.