842 A.2d 379

PENNSYLVANIA MEDICAL SOCIETY
LIABILITY INS. CO., Appellee

v.

COMMONWEALTH of Pennsylvania, MEDICAL
PROFESSIONAL LIABILITY CATASTROPHE
LOSS FUND, Appellant

St. Mary Medical Center, Appellee

v.

Medical Professional Liability Catastrophe Loss Fund
and John H. Reed, Director, Appellants.

Supreme Court of Pennsylvania.

Submitted Jan. 16, 2004.

Decided Feb. 18, 2004.

88

Guy Anthony Donatelli, West Chester, Kenneth J. Serafin, Harrisburg, Zella Smith Anderson, for appellants, PA Medical Professional Liability Catastrophe Loss Fund and Medical Care Availability and Reduction of Error Fund.

Larry L. Turner, Philadelphia, Patricia Daffodil Tyminski, for appellee, PA Medical Soc. Liability Ins. Co.

Jan Levine, Patricia A. McCausland, for appellee, St. Mary Medical Center.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

JUSTICE SAYLOR.

These consolidated appeals concern the scope of the former Medical Professional Liability Catastrophe Loss Fund's statutory obligation to defend and pay claims asserted against health care providers, in circumstances in which more than four years passed between the events giving rise to such claims and the commencement of legal proceedings to advance them.

Appellant, the Commonwealth of Pennsylvania, Insurance Department, Medical Care Availability and Reduction of Error Fund (the "MCARE Fund"), is the successor in interest to the Medical Professional Liability Catastrophe Loss Fund (the "CAT Fund"), formerly an executive agency of the Commonwealth that, from 1976 through March of 2002, implemented the portions of the Health Care Services Malpractice Act,[1]

1. Act of October 15, 1975, P.L. 390, No. 111 (as amended 40 P.S. § 1301.701–1301.1006) (superseded) ("HCSMA"). On March 20, 2002, HCSMA was supplanted by the Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, No. 13 (40 P.S. §§ 1303.101–1303.910). Nevertheless, given their timing, the circumstances presented are governed by HCSMA, although the MCARE Act

embodying Pennsylvania's statutory framework governing professional liability insurance for hospitals and physicians. Appellees, Pennsylvania Medical Society Liability Insurance Company ("PMSLIC") and St. Mary Medical Center ("St. Mary") were a primary health care insurer and health care provider, respectively, under HCSMA.

Pursuant to HCSMA, the CAT Fund generally functioned in the manner of an excess insurer, collecting a surcharge from Pennsylvania health care providers and supplementing the primary coverage required under the enactment. *See generally* 40 P.S. §§ 1301.701–1301.702 (superseded). While generally private carriers served in the role of primary insurers with initial indemnity and defense obligations, *see id.*, in circumstances in which more than four years passed between the events giving rise to liability on the part of a health care provider and the assertion of a claim against it, the CAT Fund was required to also assume central obligations of the primary insurer. *See* 40 P.S. § 1301.605 (superseded).[2] These duties include the provision of initial indemnification and funding the defense of the underlying civil action, which the parties term as "first-dollar indemnity and costs of defense" or "Section 605 status." *See* 40 P.S. § 1301.605 ("In the event that any claim is made against a health care provider subject to the provisions of Article VII more than four years after the breach of contract or tort occurred which is filed within the statute of limitations, such claim shall be defended and paid by the fund...."). Per 1996 amendments, however, this statutory prescription was made subject to an express proviso triggering such treatment "if the fund has received a written request

contains similar operative provisions. *Compare* 40 P.S. §§ 1301.605, 1301.702(c) (superseded), *with* 40 P.S. §§ 1303.715, 1303.714(b).

**2.** Apparently, the intent underlying this provision was to afford insurance companies greater certainty in terms of fixing reserves against possible claims in light of Pennsylvania's discovery rule exception to statutory periods of limitations pertaining to the commencement of certain civil actions. *See, e.g.,* Pennsylvania Legis. J.—House 2333 (Jul. 21, 1975). Even at the time of the measure's consideration, however, there was expressed opposition based on the concern that the CAT Fund would be unable to absorb the associated expense. *See, e.g.,* Pennsylvania Legis. J.—House 2945 (Oct. 15, 1975).

for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer." *Id.*[3]

PMSLIC's insured and St. Mary each received service of process involving distinct claims of professional malpractice alleged to have occurred over four years prior to such service.[4] In each instance, the service was of a writ of summons. In each case, the CAT Fund was not provided notice of the claims until more than 180 days after the date of the writ's service.[5]

PMSLIC and St. Mary both subsequently requested Section 605 status, which the CAT Fund refused on the ground that the requests were untimely. Notably, the CAT Fund did not take the position that its obligations in the nature of statutory excess coverage were foreclosed; rather, it refused only to confer Section 605's special benefit of first-dollar indemnity and costs of defense, as would have been required had timely requests been made under Section 605.

Both PMSLIC and St. Mary filed petitions for review in the Commonwealth Court's original jurisdiction naming, *inter alia,* the CAT Fund as a respondent. Each sought, *inter alia,* a declaratory judgment concerning the proper interpretation of Section 605. In this regard, PMSLIC and St. Mary in-

3. Subsequent to the 1996 amendments, the relevant text proceeded as follows:

> In the event that any claim is made against a health care provider subject to the provisions of Article VII more than four years after the breach of contract or tort occurred which is filed within the statute of limitations, such claim shall be defended and paid by the fund if the fund has received a written request for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer.

40 P.S. § 1301.605 (superseded).

4. The civil action against PMSLIC's insured concerned asserted breaches of care during hair transplant procedures; the proceedings involving St. Mary pertained to alleged injuries sustained during an infant's delivery.

5. The MCARE Fund indicates that PMSLIC also did not request Section 605 status until after 180 days following service of an actual complaint against its insureds. St. Mary, on the other hand, did lodge its Section 605 request within 180 days after service of the complaint against it.

voked Section 702(c) of the HCSMA, which provided as follows:

> The basic coverage insurance carrier or self-insured provider shall promptly notify the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's coverage or self-insurance plan or falls under section 605. . . . Failure to so notify the director shall make the basic coverage insurance carrier or self-insured provider responsible for the payment of the entire award or verdict, *provided that the fund has been prejudiced by the failure of notice.*

40 P.S. § 1301.702(c) (superseded) (emphasis added). PMSLIC and St. Mary contended that, absent a demonstration of prejudice under Section 702(c), the CAT Fund was not authorized to deny their requests for Section 605 treatment. The CAT Fund filed preliminary objections asserting, *inter alia,* that Section 605's 180–day requirement establishes a "bright line cut-off" as a threshold to the CAT Fund's provision of first-dollar indemnity and costs of defense.

After entertaining argument in the proceedings commenced by PMSLIC, a divided, *en banc* Commonwealth Court overruled CAT Fund's preliminary objections in the relevant regard. *See Pennsylvania Med. Soc'y Liab. Ins. Co. v. Commonwealth of Pa., Med. Prof'l Liab. Catastrophe Loss Fund,* 804 A.2d 1267 (Pa.Cmwlth.2002) (*"PMSLIC"*). The majority agreed with PMSLIC that, regardless of Section 605's 180–day prescription, Section 702(c) of the Act prohibited the CAT Fund from denying a request for Section 605 status made outside the 180–day time frame, unless the CAT Fund was prejudiced by the untimely request. *See id.* at 1269–70. Further, the majority reasoned that the CAT Fund's interpretation of Section 605 was at odds with this Court's jurisprudence disapproving the practice of penalizing insureds for technical breaches of policy notice provisions. *See id.* at 1270 (citing *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 75, 371 A.2d 193, 197 (1977) (" 'unless the insurer is actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-

prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision' " (citation omitted))). Finally, the majority cited the notice provision attaching to claims arising under the Political Subdivision Tort Claims Act, *see* 42 Pa.C.S. § 5522, which has been deemed by the Commonwealth Court to incorporate a prejudice dynamic. *See PMSLIC,* 804 A.2d at 1270 (citing *Leedom v. Commonwealth, Dep't of Transp.,* 699 A.2d 815, 817–18 (Pa.Cmwlth. 1997)).

Judge Friedman dissented, joined by Judge Leadbetter, contending that the majority misapplied various principles of statutory interpretation (including the courts' responsibility to construe statutes to give effect to all of their provisions, 1 Pa.C.S. § 1921(a); presume that the entire statute is intended to be effective and certain, 1 Pa.C.S. § 1922(2); apply the plain terms of the statute where they are free from ambiguity, 1 Pa.C.S. § 1921(b); and give effect to special over general provisions of the statute in the event of a conflict, 1 Pa.C.S. § 1933), resulting in the negation of Section 605's express 180–day requirement. *See PMSLIC,* 804 A.2d at 1272–74 (Friedman, J., dissenting). Furthermore, Judge Friedman reviewed the history of both Sections 605 and 702(c), noting that, prior to the 1996 amendment to Section 605 adding the 180–day limitation on requests for first-dollar-indemnity-and-costs-of-defense treatment, Section 702(c)'s prompt notice/prejudice provisos already represented a limitation on the ability of a primary insurer to gain Section 605 status. *See id.* at 1273. Thus, according to the dissent, it would serve no purpose for the General Assembly to add the 180–day requirement to Section 605, as it did in 1996, if it did not intend to implement an independent restraint. *See id.* The dissent also noted that Section 702 bifurcated the treatment of indemnity and defense obligations in a manner at variance with the majority's analysis:

It is important to note that, in Count I of its petition for review, the Insurance Company seeks both *payment* of the section 605 claim *and* the cost of *defending* the claim. However, section 702(c) of the Act, the basis for the majori-

ty's holding, pertains only to the CAT Fund's obligation to *pay* a claim; section 702(c) has nothing to do with the CAT Fund's duty to *defend* a claim. It is section 702 **(d)** of the Act, ignored by the majority, that governs the CAT Fund's responsibility to provide a defense to a claim.

(d) The basic coverage insurance carrier of self-insured provider shall be responsible to provide a *defense* to the claim, including defense of the fund, *except as provided for in section 605.* In such instances where the director has been notified in accordance with subsection (c), the director *may* join in the defense and be represented by counsel. 40 P.S. § 1301.702(d). To the extent that the majority fails to address section 702(d) of the Act, the majority has not fully disposed of the CAT Fund's preliminary objection to Count I.

*PMSLIC,* 804 A.2d at 1274 n. 4 (Friedman, J., dissenting) (emphasis in original).

At the CAT Fund's request, the Commonwealth Court amended its order pursuant to Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), to include the findings requisite to an interlocutory appeal by permission. The CAT Fund then filed a petition for permission to appeal, which this Court granted. In the proceedings involving St. Mary, the CAT Fund's preliminary objections were also denied, and a Commonwealth Court panel subsequently entered judgment in favor of St. Mary on its motion for summary disposition, based on the *en banc* court's decision in *PMSLIC.* The CAT Fund filed a direct appeal, which has been consolidated with the *PMSLIC* interlocutory appeal.

█ Presently, the MCARE Fund argues that the Commonwealth Court impermissibly engrafted the prejudice standard of Section 702(c) onto Section 605, in derogation of the plain language of the statute, principles of statutory interpretation, and the deference owed by courts to executive agencies in the arena of their administrative expertise. Further, it contends that the Commonwealth Court's construction reduces efficiency and predictability in the claims resolution process,

unreasonably burdens the MCARE Fund with litigating the question of prejudice in all cases of tardy Section 605 requests, and potentially increases its costs by depriving it of the opportunity to timely evaluate claims, all of which ultimately inure to the detriment of health care providers in the form of increased surcharges.[6] The MCARE Fund distinguishes *Brakeman* as pertaining to general common law principles of contract, which did not apply to the CAT Fund as an executive agency charged with the provision of the unique form of statutory excess coverage that was enumerated in HCMSA. Moreover, the MCARE Fund contends that the public policy underlying *Brakeman* (protecting insureds from a complete denial of coverage) did not pertain in the circumstances presented, since the relevant provisions of Section 605 merely allocated responsibilities between the CAT Fund and the primary insurer. The MCARE Fund also distinguishes the provision authorizing the rejection of claims under the Political Subdivision Tort Claims Act based on late notice, as the prejudice requirement attaching thereto derives from the express statutory requirement that non-compliance be forgiven on a showing of reasonable excuse. *See* 42 Pa.C.S. § 5522; *Leedom,* 699 A.2d at 817–18. In this regard, the MCARE Fund emphasizes that Section 605 contains no analogous (or other) excuse provision. Additionally, the MCARE Fund emphasizes that Section 605's 180–day requirement was added to the statute through 1996 amendments, which reflected an ongoing shifting of coverage obligations from the CAT Fund to primary carriers. *See, e.g.,* 40 P.S. § 1301.701(d)(1)–(3) (superseded). Thus, according to the MCARE Fund, the 180–day amendment to Section 605 also reflects the General Assembly's intent to restrict, define, and diminish the Fund's obligations. Finally, the MCARE Fund notes that insurance carriers were advised in 1997, via a policy statement, that compliance with the 180–day requirement was a condition precedent to conferral of Section 605 status. *See* 31 Pa.Code §§ 247.1, 247.2.

6. Like its predecessor, the MCARE Fund derives revenue from assessments levied on health care providers. *See* 40 P.S. § 1303.712(d).

PMSLIC and St. Mary argue, consistent with the reasoning of the Commonwealth Court majority, that the 180–day requirement was designed to make the CAT Fund's payment of Section 605 claims a certainty where the requisite notice is provided, thereby reducing the incidence of litigation, but not to foreclose the CAT Fund's first-dollar and costs of defense obligations in absence of a showing of prejudice. They note that Section 702(c) contains an express cross-reference to Section 605, which they contend would be rendered superfluous by the MCARE Fund's interpretation. Like the MCARE Fund, PMSLIC and St. Mary also claim that principles of statutory interpretation favor their position. Additionally, they characterize as a fundamental tenant of insurance law that violation of a notice provision cannot serve as the basis for denying coverage absent a showing of prejudice.

On consideration of the arguments, we agree with the MCARE Fund's essential position.[7] The CAT Fund's first-dollar indemnity and defense obligation was a particularized one, arising exclusively under Section 605 and, since 1996, there expressly conditioned on the provision of a request for such special treatment within 180 days. *See* 40 P.S. § 1301.605 (superseded). Appellees' interpretation is in tension with this design, since it envisions first-dollar-indemnity-and-costs-of-defense treatment as a more generalized entitlement persisting outside the 180–day request period, so long as no prejudice inured to the CAT Fund. We concur with Judge Friedman's view, however, that such an interpretation not only lacks statutory grounding, but also, would render Section 605's 180–day requirement superfluous.

There being no statutory source of authority other than Section 605 for first-dollar-indemnity-and-costs-of-defense treatment, compliance with Section 605's internal, express requirements must be regarded as mandatory, particu-

---

7. Our review of the legal issues involved is plenary, *see Wagner v. Wagner,* 564 Pa. 448, 455 n. 2, 768 A.2d 1112, 1116 n. 2 (2001); however, we agree with the MCARE Fund that its interpretation is entitled to deference in our assessment. *See Winslow–Quattlebaum v. Maryland Ins. Group,* 561 Pa. 629, 636, 752 A.2d 878, 881 (2000).

larly as nothing in Section 702(c) (which was in place well prior to the addition of the 180–day request requirement to Section 605), would suggest that it was intended to supplant Section 605's prescription in this regard.[8]

*Brakeman* and the notice provision of the Political Subdivision Tort Claims Act are distinguishable for the reasons advanced by the MCARE Fund. Chiefly, the CAT Fund's obligation under Section 605 was not in the nature of those specified in a consumer-oriented insurance contract, but rather, represent a specialized statutory duty with express prerequisites attached by the Legislature in an arena that, perhaps by necessity in terms of the allocation of limited resources, has become highly technical. Furthermore, as the MCARE Fund notes, Section 605 concerns only the supplanting of the primary carrier's obligations in special circumstances; the primary carrier's obligations to its insured remain extant in the absence of Section 605 status.[9]

We note that, in addition to the arguments summarized above, the MCARE Fund takes the position that Section 702 should be regarded solely as relating to the CAT Fund's indemnification obligations in the nature of excess coverage. Under this view, the MCARE Fund acknowledges, a request for Section 605 treatment that was tendered within the 180–day period could not be denied by the CAT Fund, regardless of the quantum of prejudice which may have accrued by virtue

---

**8.** The dissent indicates that Section 702 dictates "that a dilatory claim may be denied *only* when the CAT Fund suffered prejudice due to the untimely notice." Dissenting Opinion, *op.* at 101, 842 A.2d at 387 (emphasis added). Section 702, however, contains no such language of exclusivity in its remedial prescription, nor is such prescription tailored to the conferral or denial of Section 605 status as such. Therefore, contrary to the dissent's view, it cannot be relied on to eviscerate Section 605's specific prerequisite of a timely request for first-dollar-indemnity-and-costs-of-defense treatment.

**9.** In this regard, the dissenting opinion's assertion that the health care provider pays for coverage that it will not receive, *see* Dissenting Opinion, *op.* at 102, 842 A.2d at 388, is misleading. The issue before the Court relates solely to a statutory allocation of first dollar indemnity and costs of defense as between the Fund and the primary carrier—in either event, defense and indemnification remain available to the health care provider, assuming satisfaction of all other statutory and contractual requisites.

of delay in the provision of the request. For example, on questioning at oral argument, the MCARE Fund indicated that, under its interpretation, it would be required to accept the first-dollar-indemnity-and-costs-of-defense obligation in a case in which a Section 605 request was submitted on the 179th day, even if discovery deadlines had passed in an underlying medical malpractice action, or after disposition of the case via summary or default judgment, due to unreasonable failures on the part of the primary carrier. Yet, the MCARE Fund's brief contains multiple assertions that are inconsistent with this position. For example, the MCARE Fund acknowledges that, prior to the 1996 amendments adding the 180–day–request requirement to Section 605, Section 702(c) functioned as a limitation on the CAT Fund's obligations under Section 605. *See* Brief of Appellant at 21 ("Because there was no bright line cut-off within which a primary carrier had to request section 605 status from the Fund, the Fund had to accept all such claims, *unless it could show that it was prejudiced as set forth in the language of section 702(c)*" (emphasis added)), 26 (same). The MCARE Fund points to nothing on the face of the 180–day amendatory language that suggests that it was intended to obliterate this basic interrelationship. Additionally, the MCARE Fund fails meaningfully to reconcile Section 702(c)'s explicit cross-reference to Section 605 within its interpretation.[10] Given the circumstances at issue and the focus of the Commonwealth Court's holding, we need not specifically confront these incongruities in the present case,[11] but will reserve such question to

10. At oral argument, the MCARE Fund contended that the reference was included merely to permit a primary insurer to make an election as to whether it wishes to proceed pursuant to Section 605 or 702. The statute, however, although poorly worded, seems plain enough in its requirement of prompt notice in relation to a Section 605 claim. *See* 40 P.S. § 702(c) (superseded) ("The basic coverage insurance carrier or self-insured provider *shall promptly notify* the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's coverage or self-insurance plan *or falls under section 605.*" (emphasis added)).

11. Parenthetically, however, the MCARE Fund may wish to consider at least prospective application of an interpretation that does not wholly conflate Section 605's request requirement with Section 702(c)'s re-

a case in which a challenge is presented to the Fund's use of health care providers' contributions to supplant the obligations of a primary insurance carrier whose conduct has so prejudiced the Fund. We hold only that the CAT Fund's rejection of a tardy Section 605 request was not subject to a prejudice requirement.[12]

quirement of prompt notice in Section 605 cases. While it is true that a Section 605 request should generally serve as an effective notice for purposes of Section 702(c), not all Section 702(c) notices will constitute Section 605 requests, even in circumstances in which first-dollar-indemnity-and-costs-of-defense treatment may be available. For example, a carrier may in some circumstances wish to maintain the defense of an underlying claim, although it learned of the claim more than four years after the events giving rise to the potential liability of the health care provider. This might occur, for example, where factual or legal issues are in question which may be relevant to other cases in which the carrier has a substantial interest and, accordingly, it seeks to maintain closer control of the defense. In such a circumstance, the carrier would have been required to notify the CAT Fund pursuant to Section 702(c) in order to preserve the Fund's obligation in the nature of excess coverage, but would not have submitted a Section 605 request. Thus, under the plain terms of the statute, prompt notice can function independently of a Section 605 request in circumstances implicating Section 605. At least on the face of the statutory scheme, then, there is no reason why the obligation of prompt notice could not accrue prior to the passage of 180 days in a Section 605 case, for example, where dilatory conduct on the part of a primary carrier causes the Fund substantial prejudice.

Indeed, giving meaning to the General Assembly's facially apparent distinction between a Section 605 request and Section 702(c) notice would resolve most of the conflicts and ambiguities in the statutory scheme which have been identified by the parties relating to their various interpretations. The remaining ambiguity, arising out of the fact that the CAT Fund's obligation to defend was not explicitly conditioned on the receipt of prompt notice, *see generally* 40 P.S. §§ 605, 702(d), could be resolved by merely recognizing, as the Commonwealth Court has previously in the Section 605 context, that the obligation to defend is integrally related to exposure to potential indemnification. *See, e.g., Connolly v. Commonwealth, Med. Prof'l Liab. Catastrophe Loss Fund*, 693 A.2d 1018, 1020 (Pa.Cmwlth.1997) ("Section 605 cannot be read as if standing alone. Because the duty to defend arises only if the insurer would be required to pay a resulting judgment, a court must consider the scope of coverage state in the policy, or, in this case, the statute.").

12. We express no opinion concerning other issues that may be relevant to the ultimate outcome of these proceedings. For example, in denying the CAT Fund's preliminary objections to St. Mary's petition for review, the Commonwealth Court noted a significant question concerning whether the writs of summons at issue were sufficient to trigger the

The orders of the Commonwealth Court are vacated, save for the Commonwealth Court's resolution of issues that are not presently before this Court, and the matters are remanded for further proceedings in accordance with this opinion.

Justice NIGRO files a concurring opinion, joined by Justice BAER, who also joins the majority opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice NEWMAN and Justice EAKIN join.

JUSTICE NIGRO CONCURRING.

In my view, the requirement in the first sentence of section 702(c) that a basic coverage insurance carrier or self-insured provider (an "Insurer") "promptly notify" the CAT Fund director of any case that "falls under section 605" is meant to be read in conjunction with section 605, 40 P.S. § 1301.605 (superseded), so that prompt in section 702(c) is specifically defined as 180 days.[1] However, I do not believe that the prejudice requirement in the last sentence of section 702(c) was ever intended to apply with respect to section 605 requests. According to that sentence, where an Insurer fails to promptly notify the CAT Fund director of a claim, that

running of Section 605's 180–day time period, or whether the time period should be deemed to run from some other point in time (such as the time of the filing of a complaint). In light of its disposition, the Commonwealth Court has not expressed an opinion concerning the proper resolution of this issue, and the matter is not fully briefed before us. Thus, it is most appropriately considered, at least in the first instance, on remand.

1. Before it was repealed and superseded by the MCARE Act, Section 702(c) provided in whole:

The basic coverage insurance carrier or self-insured provider shall promptly notify the director of any case where it reasonably believes that the value of the claim exceeds the basic insurer's coverage or self-insurance plan or falls under section 605. Such information, including the fund's claim file, shall be confidential, notwithstanding the act of June 21, 1957 (P.L. 390, No. 212) referred to as the Right To Know Law and the act of July 3, 1986 (P.L. 388, No. 84), known as the "Sunshine Act." Failure to so notify the director shall make the basic coverage insurance carrier or self-insured provider responsible for the payment of the entire award or verdict, provided that the fund has been prejudiced by the failure of notice.

40 P.S. § 1301.702(c) (footnotes omitted) (superseded).

Insurer shall be "responsible for the payment *of the entire award or verdict*" where the CAT Fund has been prejudiced by the untimely notice. *See* 40 P.S. § 1301.702(c) (superseded) (emphasis added). As this sentence makes an Insurer responsible for the entire verdict, it was clearly not meant to apply with respect to section 605 requests where the Insurer was solely seeking first dollar indemnity. Simply because an Insurer failed to make a prompt 605 request cannot possibly mean that the CAT Fund may also refuse excess coverage. Thus, in my view, the final sentence of section 702(c) only applies to circumstances in which the Insurer notifies the CAT Fund that it believes the value of the claim exceeds the Insurer's basic coverage.

Justice BAER joins.

CHIEF JUSTICE CAPPY DISSENTING.

As I believe that the reasoning employed by the majority is not in accord with the Health Care Services Malpractice Act ("HCSMA"), 40 P.S. §§ 1301.701 *et seq.,* and also runs counter to the very purpose of the Medical Professional Liability Catastrophe Loss Fund (the "CAT Fund"), I must respectfully dissent.

The majority declares that the CAT Fund may summarily deny a request for § 605 status where the request was made more than 180 days after the health care provider or insurer first received notice of the claim, even when the CAT Fund concedes that it suffered not one iota of prejudice.[1]

There are two reasons why this reasoning greatly disturbs me. First, it does not fully integrate § 702's dictate that a dilatory claim may be denied only when the CAT Fund suffered prejudice due to the untimely notice. This runs counter to the legislature's exhortation that to the extent

1. The CAT Fund conceded at oral argument that in neither of these matters was it prejudiced by notice of the § 605 claims provided beyond the 180 day window.

possible, we are to read statutes which relate to the same subject matter *in pari materia.* 1 Pa.C.S. § 1932.

In my opinion, we can honor the legislature's directive to read these statutes *in pari materia* as §§ 605 and 702 of the HCSMA can readily be interpreted in such a fashion as to be in harmony with one another. Section 702 states that a self-insured health care provider or basic coverage insurance carrier must "promptly notify" the director of the CAT Fund "where it reasonably believes that ... the claim ... falls under section 605." 40 P.S. § 1301.702(c).

While § 702 does not further elucidate the concept of prompt notice, § 605 does. Section 605 directs that requests for § 605 status must be made within 180 days. 40 P.S. § 1301.605. In my opinion, that 180 day provision defines what is "prompt notice". If a health care provider or insurer notifies the CAT Fund within 180 days of receiving notice of the claim, then, per § 702, the notice is prompt and § 605 status must be conferred. If, however, notice is given beyond the 180 day window, then notice is not prompt. Per § 702, where notice is not promptly given, the CAT Fund may deny the claim, but only if it can establish that it was prejudiced by the dilatory notice. 40 P.S. § 1301.702(c).[2] This interpretation is the more sound one as it gives effect to both § 605 as well as § 702.

This interpretation also happens to be in harmony with the purpose of the CAT Fund. The CAT Fund was created to provide liability coverage in the medical arena. *See* 40 P.S. § 1301.102. In my opinion, the CAT Fund's provision of coverage has thus provided a welcome modicum of stability in the sometimes unhinged arena of medical malpractice litigation. The CAT Fund in these matters, on the other hand, seems to believe that the primary goal of the Fund is not to ensure the

**2.** I note that this interpretation of §§ 605 and 702 is also in accord with our decision in *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977). In that matter, we reasoned that an insurer may not deny a claim simply because it did not receive prompt notice of a claim. Rather, the insurer must establish "not only that the notice provision was breached, but also that it suffered prejudice as a consequence." *Id.* at 196.

provision of medical liability coverage in this commonwealth, but rather is merely to perpetuate its own existence, divorced from its purpose of ensuring the provision of medical liability coverage in this commonwealth.

Furthermore, the CAT Fund's interpretation also strikes me as unreasonable. Health care providers are compelled by statute to pay a surcharge to the CAT Fund. Yet, the CAT Fund contends that it should be allowed to avoid providing statutorily-mandated coverage on the basis that notice of a claim went beyond a 180 day period, even when the CAT Fund concedes that it was not prejudiced by receiving notice beyond this 180 day window. Thus, per the CAT Fund's interpretation, the health care provider pays for coverage it will not receive, and then potentially pays again if the claim against it (which the CAT Fund ought to cover) is found to be meritorious.

Thus, in these matters *sub judice*, I would find that the requests for § 605 status were not prompt for purposes of § 702 as they were made beyond the 180 day window established in § 605. Yet, per § 702, I would find that the CAT Fund may not deny Appellees § 605 status as the CAT Fund has conceded that Appellees' failure to provide prompt notice did not prejudice the CAT Fund. Accordingly, I dissent.

Justice NEWMAN and Justice EAKIN join this dissenting opinion.