FUENTES, Circuit Judge,
dissenting.
Contrary to the majority view, I believe that Endorsement # 007 of the Lexington Insurance Company (“Lexington”) policy is inapplicable in this matter and that Western Pennsylvania Hospital (“West Penn”) is entitled to excess coverage under the terms of that policy. Under those terms, where a claim, such as the Lieb claim, is not covered by West Penn’s primary insurer (PHICO), but is instead covered by the Medical Professional Liability Catastrophe Fund (the “CAT Fund”), the default notice provisions of the Lexington policy apply. Under those notice provisions, West Penn gave timely notice. Alternatively, even assuming that the majority’s construction of the contract is correct, I believe West Penn has created a genuine dispute as to whether notice was timely given. I therefore respectfully dissent.
A.
The central question here is whether West Penn was required to give Lexington notice of the Lieb claim by December 31, 2001, pursuant to Endorsement # 007, or within a “reasonable” time, pursuant to Endorsement # 001 and Lexington’s default notice requirements. If West Penn is right that Endorsement # 007 does not apply, then under Pennsylvania’s “notice-prejudice rule,” Lexington may not refuse coverage unless it was prejudiced by late notice. See Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A.2d 193, 195-96 (1977). As Lexington concedes it was not prejudiced, West Penn would be entitled to coverage.
The interplay between Endorsement # 001, Endorsement # 007, and § 605 (the CAT Fund) is critical to the notice issue. *334 As the majority explains, if West Penn failed to notify Lexington of the Lieb claim within the policy period (January 1, 2001 to January 2, 2002),[10] Lexington may refuse coverage if and only if Endorsements # 007 and # 001 are co-extensive with respect to § 605 claims like the Lieb claim. Lexington may not refuse coverage if those endorsements are alternatives to one another, i.e., if Endorsement # 007 applies only to PHICO claims and not to § 605 claims.
The plain language of the two endorsements at issue here clearly favors West Penn. Endorsement # 007 applies where “coverage is available to the Insured in the underlying insurance as set forth in the Schedule of Underlying Insurance.” In other words, Endorsement # 007 would apply if the PHICO policy were available to West Penn. Endorsement # 001 applies “[i]n the event underlying insurance shall not be applicable to any claims for the reason that the Medical Professional Liability Catastrophe Fund [CAT Fund] shall assume or be required to assume primary responsibility for payment.” That is, if the CAT Fund assumes responsibility for a claim, as it does here for the Lieb claim, then Endorsement # 001, not Endorsement # 007, applies.[11] Endorsement # 001 goes on to provide that the terms of the Lexington policy are otherwise unchanged. On its face, the Lexington policy in no way invokes the reporting requirements of the PHICO policy with respect to § 605 claims. As such, the Pennsylvania notice-prejudice rule applies, and since Lexington concedes it cannot show prejudice, it must provide West Penn with coverage.
The majority asserts that Endorsements # 007 and # 001 are complementary, largely on the grounds that both PHICO and § 605 claims are claims-based, rather than occurrence-based. As such, the majority reasons that it would be illogical to apply the default notice provisions of the Lexington policy to § 605 claims because those provisions are intended to apply to the otherwise occurrence-based coverage of the Lexington policy.
The majority is right in its assumption that the CAT fund operates on a claims-made model. Pennsylvania law provides that “[i]n the event that any claim is made against a [qualified] health care provider ... more than four years after the breach of contract or tort occurred which is filed within the statute of limitations, such claims shall be defended and paid by the fund.” 40 Pa. Stat. Ann. Tit. 40 § 1301.605.[12] In 1996, the statute was amended to trigger coverage only “if the fund has received a written request for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer.” Id. This reporting requirement, consistent with traditional claims-made policies, is not subject to the Brakeman notice-prejudice rule. See Pa. Med. Soc. Liab. Ins. Co. v. Commonwealth of Pa. *335 Med. Prof’l Liab. Catastrophe Loss Fund, 577 Pa. 87, 842 A.2d 379, 385-86 (2004).
The majority is also right that claims-made policies almost always predicate coverage on reporting of a claim by the insured to the insurer within the policy period. “[A] ‘claims-made’ insurance policy represents a distinct bargained-for exchange between insurer and insured.” See Pizzini v. Am. Int’l Specialty Lines Ins. Co., 210 F.Supp.2d 658, 668 (E.D.Pa.2002). “An insurer obtains the benefits of a clear and certain cut-off date for coverage. In return, the insured typically pays a lower premium.” Id.
Nevertheless, the usual reporting requirements for claims-made policies cannot be read into an insurance policy to make it more economically sensible where those reporting requirements are not actually set forth in the policy. See Harleysville Ins. Co. v. Aetna Casualty & Surety Ins. Co., 568 Pa. 255, 795 A.2d 383, 386-87 (2002) (“[T]he standard for interpreting insurance policies does not allow us to focus solely on the nature of the policy and ignore the plain meaning of the policy terms.”). Section 605 claims are “claims-made” because the CAT fund operates on a claims-made model, not because they are covered by Endorsement # 007. The mere fact that § 605 claims are claims-based and that they must be timely reported to the CAT fund does not imply that, vis-a-vis Lexington, they are governed by Endorsement # 007 and PHICO reporting requirements. On its face Endorsement # 007’s coverage is defined and limited to PHICO claims.
Moreover, Endorsement # 001, which indisputably does cover § 605 claims, does not provide that the reporting requirements of the CAT fund apply to Lexington’s excessive coverage for § 605 claims (in the way that Endorsement # 007 provides that the reporting requirements of the PHICO policy apply to Lexington’s excessive coverage for PHICO claims). Instead, Endorsement # 001 leaves the general notice requirements of the Lexington policy in place with respect to § 605 claims.[13]
Lexington Insurance is correct that if it appears that Endorsement # 007 governs § 605 claims, its reporting requirements trump those of the general policy. See St. Paul & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir.1981) (“If there is a conflict between the terms of the endorsement and those in the body of the main policy, then the endorsement prevails, particularly when it favors the insured.”). “[Wjhen a specific form of insurance is provided by an endorsement tailored to meet the particular needs of the insured and the company, that language must be followed to carry out the intentions of the parties.” Id. at 524. However, in this case, the language of Endorsement # 007 gives no indication that it was tailored to § 605 claims. Endorsement # 007 appears on its face to have been intended to apply only to PHICO claims. *336 Accordingly, the Lieb claim is governed by Endorsement # 001 alone, and Lexington’s general notice requirements apply. Under Brakeman, Lexington may not deny coverage under those provisions because it was not prejudiced by any delay in notice.
At the very least, the fact that Endorsement # 007 was not written to capture § 605 claims renders the scope of its notice requirements ambiguous. If Lexington wanted to require that it be notified of § 605 claims by the close of the policy period, such a requirement would have been easy to articulate. Indeed, West Penn’s Lexington excess coverage policy for the 2002 calendar year included Endorsement # 006, which expressly provided that excess coverage was available only if claims were made and reported to Lexington within the policy period. Lexington’s “failure to utilize more distinct language” in the 2001 calendar year policy even though it was available “reinforces a conclusion of ambiguity under Pennsylvania law.” Med. Protective Co. v. Watkins, 198 F.3d 100, 105 (3d Cir.1999) (quotations omitted). If the insurance policy is ambiguous, we must construe it in favor of the insured and West Penn prevails. See Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 168 (3d Cir.1988); Reliance Ins. Co. v. Moessner, 121 F.3d 895, 905 (3d Cir.1997). For the foregoing reasons, I would vacate the District Court’s order of summary judgment and direct it to enter summary judgment in favor of West Penn.
B.
Even assuming that the majority’s construction of the policy is correct, I would still vacate the order of summary judgment in favor of Lexington because West Penn has raised a genuine issue as to material fact that barred summary judgment. There is no doubt that if West Penn gave Lexington notice of the Lieb claim within the policy period, i.e., January 1, 2001 to December 31, 2001, the Lexington policy would have to provide excess coverage for Lieb’s malpractice action. In the District Court, Lexington denied receipt of proper notice. West Penn, however, offered evidence from Lexington’s own records that casts doubt on this denial of notice. Specifically, West Penn introduced a document entitled the “HPL Create Sheet.” The document pertains to the Lieb claim and contains the following notation: “Date of Rpt: 12-31-01.” In the HPL Create Sheet, Lexington appears to admit that the Lieb claim was reported to it within the policy period.
Moreover, while I agree with the majority that the testimony of Karen A. Barring-er, West Penn’s Assistant General Counsel during the relevant period, standing alone, may be insufficient to establish a timely report date, the existence of a file in Lexington’s records consistent with her account (i.e., that West Penn notified Lexington of the Lieb in the very last days of the policy period) bolsters its reliability. Together with the HPL Create Sheet, her testimony meaningfully contests Lexington’s claim that West Penn failed to give notice within the policy period. For this alternative reason, I would vacate the order granting summary judgment to Lexington and remand for resolution of the disputed issue as to the timing of notice.

. As I discuss below, I believe West Penn has created a genuine dispute as to this fact.

. The majority points out that Endorsement # 007 refers to the "availability]” of PHICO coverage while Endorsement #001 refers to the "applicability]” of PHICO coverage. Lexington's theory that a policy may be "generally” available for claims that the policy does not in fact cover is novel, but implausible. While a policy may be unavailable for any number of reasons, it is neither available nor applicable to claims for which coverage is explicitly excluded by the terms of the policy.

.Section 605 of the Health Care Act was later repealed by the Pennsylvania legislature when it reconstituted the CAT Fund as the Medical Care Availability and Reduction of Error Fund. See Act of March 20, 2002, P.L. 154, No. 13, § 5104(a)(2).

. Endorsement #001 leaves all the general terms of the Lexington policy in place except insofar as they are contravened by the terms of the endorsement. The notice provisions of Lexington's general policy apply to claims covered by Endorsement #001 because that endorsement does not set forth alternative notice requirements. By contrast, Lexington’s general requirement that covered claims relate to incidents that occurred during the policy period does not apply because Endorsement #001 explicitly provides excess coverage for § 605 claims, all of which arise more than four years after the underlying occurrences. Because Lexington's general policy requirements apply to § 605 claims except insofar as they contradict the terms of Endorsement # 001, the majority's worry that Endorsement #001 is rendered nonsensical under a literal reading because Lexington's occurrence-based requirements would exclude all § 605 claims, is unfounded.